Electronically Filed
2/14/2018 3:18 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
**DICKINSON WRIGHT PLLC**
MICHAEL N. FEDER
Nevada Bar No. 7332
Email: mfeder@dickinson-wright.com
GABRIEL A. BLUMBERG
Nevada Bar No. 12332
Email: gblumberg@dickinson-wright.com
HILARY WILLIAMS
Nevada Bar No. 14645
Email: hwilliams@dickinson-wright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Tel: (702) 550-4400
Fax: (844) 670-6009
*Attorneys for Plaintiff*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| PATCHMD, LLC, a Nevada Limited Liability Company, | CASE NO.  A-18-769567-B |
| | DEPT.    Department 25 |
| Plaintiff, | **COMPLAINT** |
| v. | **Exempt from Arbitration:** |
| DENNIS SHEPHERD, an individual; JENNIFER LAIRD, an individual; KYMBIRLEY BRAKE, an individual; JAYME FRASSETT, an individual; NICOLE SANTOS, an individual; PEARL COETZEE, an individual;  and PATCH 4 ALL, INC., a California corporation; | **Extraordinary Relief Requested; Damages in Excess of $50,000** |
| | **(Business Court Requested)** |
| Defendants. | |

Plaintiff PatchMD ("PatchMD"), by and through its attorneys, the law firm of Dickinson Wright PLLC, files this Complaint against Defendants Dennis Shepherd ("Shepherd"), Jennifer Laird ("Laird"), Kymbirley Brake ("Brake"), Jayme Frassett ("Frassett"), Nicole Santos ("Santos"), Pearl Coetzee ("Coetzee," and collectively with Shepherd, Laird, Brake, Frassett, and Santos, the "Individual Defendants"), and Patch 4 All, Inc. ("Patch 4 All," and together with Individual Defendants, the "Defendants") as follows:

## I.  PARTIES, JURISDICTION, AND VENUE

1.     PatchMD is a Nevada limited liability company and, at all times relevant herein, conducted business in Clark County, Nevada.

2.      PatchMD is informed and believes and thereupon alleges that Shepherd is a resident of California and, at all times relevant herein, conducted business in Clark County, Nevada.

3.      PatchMD is informed and believes and thereupon alleges that Laird is a resident of California and, at all times relevant herein, conducted business in Clark County, Nevada.

4.      PatchMD is informed and believes and thereupon alleges that Brake is a resident of California and, at all times relevant herein, conducted business in Clark County, Nevada.

5.      PatchMD is informed and believes and thereupon alleges that Frassett is a resident of California and, at all times relevant herein, conducted business in Clark County, Nevada.

6.      PatchMD is informed and believes and thereupon alleges that Santos is a resident of Utah and, at all times relevant herein, conducted business in Clark County, Nevada.

7.      PatchMD is informed and believes and thereupon alleges that Coetzee is a resident of Nevada and, at all times relevant herein, conducted business in Clark County, Nevada.

8.      Patch 4 All is a California corporation and PatchMD is informed and believes and thereupon alleges that, at all times relevant herein, Patch 4 All conducted business in Clark County, Nevada.

9.      PatchMD is informed and believes and thereupon alleges that the Individual Defendants are the alter egos of Patch 4 All and that they govern Patch 4 All's business and/or operations and have such a unity of interest with Patch 4 All that to adherence to the corporate fiction would sanction fraud and promote manifest injustice.

10.     PatchMD alleges the true names and capacities, whether individual, corporate, associates or otherwise of Defendants named herein as Does Individuals and Roe Entities I through X, inclusive, are unknown to PatchMD, who therefore sues said Defendants by such fictitious names. PatchMD will ask leave to amend this Complaint to show the true names and capacities of Does Individuals and Roe Entities I through X inclusive when the same have been ascertained. PatchMD believes and therefore alleges that each defendant named as a Doe Individual and Roe Entity is responsible in some manner for the events herein referred to and caused damages proximately thereby to PatchMD as alleged herein.

11.     This Court has personal jurisdiction over Defendants because they have conducted business

1    at all times relevant herein in Clark County, Nevada, and their harm caused and obligations to

2    PatchMD arise from actions undertaken in Clark County, Nevada. Namely, Defendants knew that

3    PatchMD was and is a Nevada company that operates in Clark County, Nevada. Moreover,

4    Defendants knew that any harm to PatchMD from Defendants' malfeasance would be felt and have

5    an effect on PatchMD in Clark County, Nevada.

6    12.    Venue is proper in this district pursuant to NRS 13.010 and 13.040.

## II.    FACTUAL BACKGROUND

8    13.    PatchMD repeats, re-alleges and incorporates the allegations set forth in the preceding

9    paragraphs as if fully set forth herein.

10   **Overview of PatchMD**

11   14.    In or about September 2009, Shepherd and Earl Hailey ("Hailey") formed PatchMD to sell

12   vitamins and supplements in a topical patch that utilizes the skin for the delivery system.

13   15.    Shepherd claims he was and remains the largest interest holder in PatchMD and served as

14   PatchMD's CEO until his removal as CEO in December 2017.

15   16.    Hailey was and remains one of the two largest interest holders in PatchMD and serves as

16   PatchMD's President.

17   17.    Over the course of the approximately eight and a half years following the formation of

18   PatchMD, PatchMD has developed and maintained trade secrets and confidential information in

19   and relating to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and

20   prospective); (d) business relationships and internal pricing strategies with patch creators,

21   manufacturers, wholesalers, affiliates, and retailers;  (e) search engine optimization and search

22   engine marketing including keywords used and targeted in relation to its online platforms;  (f)

23   online advertising strategies, bids, commission rates, and the display networks, affiliate sites and

24   agencies used; and (g) marketing and advertising materials created for PatchMD prior to January

25   16, 2018 (the "Trade Secrets").

26   18.    PatchMD has kept these Trade Secrets confidential by, among other things, drafting,

27   preparing, and distributing nondisclosure agreements, communicating nondisclosure expectations,

28   and otherwise instituting policies to protect the Trade Secrets.

3

19.     The confidential and proprietary nature of the Trade Secrets has been repeatedly acknowledged by PatchMD executives and employees, including Shepherd who has explicitly acknowledged PatchMD's Trade Secrets and the need to protect the Trade Secrets from outside businesses and third-parties.

**Shepherd Begins Taking Actions Contrary to PatchMD's Interests and Is Removed as CEO**

20.     In or around January 2017, Shepherd, without the knowledge of, or authority from, the other members of PatchMD, unilaterally increased his monthly salary to $45,000 per month. This salary was well in excess of the monthly salary that Shepherd and Brake had misrepresented Shepherd was drawing, and was never approved by the other members of PatchMD.

21.     Shepherd then further breached his fiduciary duty and duty of loyalty to the company in May 2017 by once again unilaterally increasing his monthly salary to at least $50,000 per month without the knowledge of, or approval from, the other members of PatchMD. Shepherd also paid himself an unauthorized bonus of $75,000 between November 25 and December 8, 2017.

22.     At the same time Shepherd was inappropriately increasing his salary and lining his own pockets with PatchMD's funds, he was also refusing to authorize distributions to PatchMD's interest holders.

23.     Upon learning of Shepherd's improper actions, including, but not limited to, drawing an annual salary in excess of $600,000, taking an unauthorized $75,000 bonus, and improperly using corporate funds, the remaining interest holders in PatchMD elected to remove Shepherd as CEO.

**Shepherd Forms a Competing Entity, Patch 4 All, Using PatchMD's Trade Secrets and Employees**

24.     PatchMD is informed and believes and thereupon alleges that soon after being removed as CEO, or possibly even earlier, Shepherd, along with Individual Defendants, began misappropriating PatchMD's Trade Secrets and interfering with PatchMD's business relationships and economic expectancy.

25.     PatchMD is informed and believes and thereupon alleges that Shepherd disabled PatchMD's American Express cards that were used to pay for PatchMD's advertisements and daily operational needs and changed the registration information for PatchMD's website domain names

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

1    to reference himself and persons and/or entities over which he had control to the detriment of

2    PatchMD.

3    26.    PatchMD is informed and believes and thereupon alleges that Shepherd also began

4    contacting and soliciting PatchMD executives, employees, and consultants in an effort to get them

5    to work with him at Patch 4 All, an entity formed to directly compete with PatchMD and funded

6    using the excessive salary Shepherd had been taking from PatchMD.

7    27.    PatchMD is informed and believes and thereupon alleges that Shepherd improperly

8    solicited the following PatchMD executives, employees, and/or consultants to assist in the creation

9    of Patch 4 All and then leave PatchMD: PatchMD's Vice President Laird, PatchMD's CFO Brake,

10   PatchMD's Creative Director Frassett, PatchMD's Wholesale Accounts Manager Coetzee, and

11   PatchMD's marketing and social media resource Santos.

12   28.    As a result of Shepherd's improper solicitation, Laird, Brake, Frassett, Coetzee and Santos

13   all left PatchMD's employment over the same weekend in or around mid-January 2018 to join

14   Patch 4 All.

15   29.    Not only did Laird, Brake, Frassett, Coetzee and Santos agree to work for Patch 4 All, but

16   they also conspired with Shepherd to access and transfer PatchMD's Trade Secrets to Patch 4 All

17   while they remained employed and/or under contract with PatchMD.

18   30.    By way of further example, in furtherance of their scheme to develop Patch 4 All and

19   misappropriate PatchMD's Trade Secrets, Laird forwarded numerous emails regarding PatchMD's

20   Trade Secrets, including, *inter alia*, PatchMD's confidential and proprietary purchase order

21   information, customer lists, and marketing strategy directly from her PatchMD email address to

22   her already established Patch 4 All email address.

23   31.    In addition to transferring the Trade Secrets to Patch 4 All, Laird also attempted to delete

24   Trade Secrets files from PatchMD's online file system prior to leaving PatchMD in an effort to

25   give a competitive advantage to Patch 4 All.

26   32.    Laird also has misappropriated and withheld approximately twelve customer and

27   prospective customer mailing lists (the "Customer Lists") vital to PatchMD's business operations.

28   Although Laird has returned what she purports to be PatchMD's unsubscribe list, and thereby

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

1    confirmed she had misappropriated PatchMD's Trade Secrets, Laird has yet to return the Customer

2    Lists or provide access to the original complete Customer Lists and unsubscribe files.

3    33.    Similarly, Brake has misappropriated and withheld PatchMD's accounting records as

4    contained in its desktop QuickBook files (the "Accounting Records"), which records are vital to

5    PatchMD's business operations. Brake retains the Master Administrator credentials on PatchMD's

6    Online QuickBooks account, which only she can transfer to PatchMD. Despite PatchMD's

7    unambiguous demand to Brake to return the Accounting Records, Brake has refused and continues

8    to refuse to return them and instead, PatchMD is informed and believes and thereupon alleges that,

9    Brake is wrongfully using PatchMD's confidential and proprietary information for Defendants'

10   benefit.

11   **Patch 4 All Mirrors PatchMD's Business Model and Uses PatchMD's Trade Secrets to**
     **Compete Directly with PatchMD and Reduce PatchMD's Business**

12

13   34.    Similar to PatchMD, Patch 4 All sells patches that provide vitamins and supplements by

14   utilizing the skin for the delivery system.

15   35.    PatchMD is informed and believes and thereupon alleges that Patch 4 All sells patches

16   under brand name Ohana, as well as other brand names.

17   36.    PatchMD is informed and believes and thereupon alleges that the Ohana patch sold by

18   Patch 4 All uses PatchMD's confidential and proprietary patch formulas and patch design, and

19   Patch 4 All markets the Ohana patch using, *inter alia,* PatchMD's confidential and proprietary

20   Customer Lists and marketing strategies.

21   37.    PatchMD is informed and believes and thereupon alleges that Defendants are also using

22   patch formulas and patch designs exclusively licensed to PatchMD in Patch 4 All's regular course

23   of business, and Defendants are misrepresenting to third parties that PatchMD is fully aware of

24   their actions and, further, that Shepherd personally owns certain proprietary formulas for

25   PatchMD's patches.

26   ///

27   ///

28   ///

6

38.     In addition to selling the same or similar products as PatchMD, Patch 4 All has also converted PatchMD's physical check printing account by changing the contact information on the account to reflect Patch 4 All's information and ordering checks through the account on behalf of Patch 4 All.

39.     Defendants' actions have caused and will continue to cause irreparable harm to PatchMD warranting the imposition of injunctive relief to enjoin Defendants' wrongful conduct, including precluding Defendants from using PatchMD's Trade Secrets.

40.     Without injunctive relief, Defendants will continue to wrongfully utilize PatchMD's Trade Secrets to operate Patch 4 All including, but not limited to, continuing to contact people on PatchMD's confidential and proprietary customer, prospect, marketing partner, manufacturer and supplier lists in an effort to continue to wrongfully and intentionally garner and steal business away from PatchMD.

## III.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (Violation of the Uniform Trade Secrets Act under NRS 600A Against All Defendants)

41.     PatchMD repeats and re-alleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

42.     PatchMD possesses Trade Secrets and takes adequate measures to guard the secrecy of its confidential information and Trade Secrets.

43.     The Trade Secrets derive independent economic value from not being generally known and not being readily ascertainable by the public.

44.     Individual Defendants obtained access to the Trade Secrets under circumstances giving rise to a duty to maintain the secrecy of the Trade Secrets.

45.     Individual Defendants intentionally and with intent to injure PatchMD disclosed the Trade Secrets to Patch 4 All without PatchMD's express or implied consent.

46.     Defendants have wrongfully utilized PatchMD's Trade Secrets for their own business benefit and have received direct and indirect benefits from that wrongful utilization in addition to harming PatchMD and causing PatchMD to lose profits.

47.     Defendants' misappropriation of PatchMD's Trade Secrets was intentional, knowing, willful, malicious, and oppressive.

48.     Unless temporarily, preliminarily and permanently enjoined, Defendants will continue to misappropriate, disclose, and use for their own benefit and to PatchMD's detriment, PatchMD's Trade Secret information.

49.     As the direct and proximate result of Defendants' conduct as aforesaid, PatchMD has suffered and, if Defendants' conduct is not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

50.     Furthermore, Defendants' improper use of PatchMD's Trade Secrets is causing irreparable harm to PatchMD's goodwill and business reputation.

51.     PatchMD seeks temporary, preliminary, and permanent injunctive relief: (i) enjoining Defendants from utilizing PatchMD's Trade Secrets; (ii) mandating that Defendants return and/or provide access to, and then destroy PatchMD's Trade Secrets and confidential and proprietary information in their possession, custody, or control including, but not limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, manufacturers, wholesalers, affiliates, and retailers;  (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms;  (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018; and (iii) mandating that Defendants return and/or provide access to the original Customer Lists and Accounting Records to PatchMD.

52.     PatchMD's business is reliant on its business reputation, good will, and its ability to maintain and grow its client base in a competitive market and PatchMD has suffered and will continue to suffer irreparable harm absent injunctive relief.

53.     Moreover, as a direct, proximate, and foreseeable result of Defendants' conduct, PatchMD has been damaged in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

54.     Defendants' conduct was oppressive, malicious, fraudulent, and was carried out in bad faith and with conscious disregard for the rights and well-being of PatchMD, thereby warranting the assessment of exemplary and punitive damages pursuant to NRS 600A.050 against Defendants in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

55.     PatchMD has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

## SECOND CAUSE OF ACTION
### (Conversion Against All Defendants)

56.     PatchMD repeats and re-alleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

57.     PatchMD is the owner of PatchMD's Trade Secrets.

58.     Defendants knew or should have known that PatchMD's Trade Secrets were owned by PatchMD.

59.     Defendants have exerted a distinct act of dominion and control over PatchMD's Trade Secrets in denial of and/or inconsistent with PatchMD's title or rights therein, and in derogation, exclusion or defiance of PatchMD's title or rights therein.

60.     Defendants have wrongfully utilized PatchMD's Trade Secrets for their own business benefit and have received direct and indirect benefits from that wrongful utilization in addition to harming PatchMD and causing PatchMD to lose profits.

61.     Defendants' misappropriation of PatchMD's Trade Secrets was intentional, knowing, willful, malicious, and oppressive.

62.     Unless temporarily, preliminarily and permanently enjoined, Defendants will continue to misappropriate, disclose, and use for their own benefit and to PatchMD's detriment, PatchMD's Trade Secret information.

63.     As the direct and proximate result of Defendants' conduct as aforesaid, PatchMD has suffered and, if Defendants' conduct is not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial

64.     Furthermore, Defendants' improper use of PatchMD's Trade Secrets is causing irreparable harm to PatchMD's goodwill and business reputation.

65.     PatchMD seeks temporary, preliminary, and permanent injunctive relief: (i) enjoining Defendants from utilizing PatchMD's Trade Secrets; (ii) mandating that Defendants return and/or provide access to, and then destroy PatchMD's Trade Secrets and confidential and proprietary information in their possession, custody, or control including, but not limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, marketing partners, manufacturers, wholesalers, affiliates, and retailers; (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms; (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018; and (iii) mandating that Defendants return and/or provide access to the original Customer Lists and Accounting Records to PatchMD.

66.     PatchMD's business is reliant on its business reputation, good will, and its ability to maintain and grow its client base in a competitive market and PatchMD has suffered and will continue to suffer irreparable harm absent injunctive relief.

67.     As a direct, proximate, and foreseeable result of Defendants' conduct, PatchMD has been damaged in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

68.     Defendants' conduct was oppressive, malicious, fraudulent, and was carried out in bad faith and with conscious disregard for the rights and well-being of PatchMD, thereby warranting the assessment of exemplary and punitive damages against Defendants in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

69.     PatchMD has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

/ / /

/ / /

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

## THIRD CAUSE OF ACTION
### (Intentional Interference with Business Relationships Against All Defendants)

70.   PatchMD repeats and re-alleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

71.   Defendants knew and were aware of PatchMD's contractual or implied contractual business relationships with its customers, vendors, employees, manufacturers, wholesalers, and suppliers.

72.   Defendants interfered with PatchMD's business relationships by, *inter alia*, misappropriating PatchMD's Trade Secrets and contacting PatchMD's customers, vendors, employees, marketing partners, manufacturers, wholesalers, and suppliers to induce or attempt to induce these third-parties to cease doing business with PatchMD and to enter into a business relationship with Defendants.

73.   Defendants' actions in contacting PatchMD's customers, vendors, employees, marketing partners, manufacturers, wholesalers, and suppliers were committed without privilege or justification.

74.   As a direct, proximate, and foreseeable result of Defendants' conduct, PatchMD has been damaged in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

75.   Defendants' conduct was oppressive, malicious, fraudulent, and was carried out in bad faith and with conscious disregard for the rights and well-being of PatchMD, thereby warranting the assessment of exemplary and punitive damages against Defendants in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

76.   Furthermore, Defendants' improper and intentional interference with PatchMD's business relationships is causing irreparable harm to PatchMD's goodwill and business reputation.

77.   Defendants will continue to directly and/or indirectly interfere with PatchMD's business relationships unless and until enjoined by this Court.

78.   PatchMD seeks temporary, preliminary, and permanent injunctive relief enjoining Defendants from further interfering with PatchMD's business relationships.

79.   PatchMD has been required to retain the services of an attorney to pursue its claims against

1  Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this
2  action.

3  **FOURTH CAUSE OF ACTION**
   **(Intentional Interference with Prospective Economic Advantage Against All Defendants)**
4

5  80.     PatchMD repeats and re-alleges each and every allegation set forth above and incorporates
6  them herein by reference as though fully set forth.

7  81.     Defendants knew and were aware of PatchMD's prospective contractual business
8  relationships with customers, vendors, marketing partners, manufacturers, wholesalers, and
9  suppliers.

10  82.     Defendants intended to harm PatchMD by preventing prospective contractual business
11  relationships with its customers, vendors, marketing partners, manufacturers, wholesalers, and
12  suppliers.

13  83.     Defendant had no privilege or justification for interfering with and preventing PatchMD
14  from executing these prospective contractual business relationships.

15  84.     As a direct, proximate, and foreseeable result of Defendants' conduct, PatchMD has been
16  damaged in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

17  85.     Defendants' conduct was oppressive, malicious, fraudulent, and was carried out in bad
18  faith and with conscious disregard for the rights and well-being of PatchMD, thereby warranting
19  the assessment of exemplary and punitive damages against Defendants in an amount to be proven
20  at trial, but which PatchMD alleges is in excess of $15,000.

21  86.     Furthermore, Defendants' improper and intentional interference with PatchMD's
22  prospective business relationships is causing irreparable harm to PatchMD's goodwill and business
23  reputation.

24  87.     Defendants will continue to directly and/or indirectly interfere with PatchMD's prospective
25  business relationships unless and until enjoined by this Court.

26  88.     PatchMD seeks temporary, preliminary, and permanent injunctive relief enjoining
27  Defendants from further interfering with PatchMD's prospective business relationships.

28

89.     PatchMD has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

## FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Shepherd, Laird, and Brake)

90.     PatchMD repeats and re-alleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

91.     Shepherd, as CEO and the supposed largest interest holder of PatchMD and former CEO, owed PatchMD fiduciary duties including but not limited to a duty of good faith, honesty, care, loyalty, candor, full and fair disclosure and duty to avoid self-dealing.

92.     Laird, as Vice President of PatchMD, owed PatchMD fiduciary duties including, but not limited to, a duty of good faith, honesty, care, loyalty, candor, full and fair disclosure and duty to avoid self-dealing.

93.     Brake, as CFO of PatchMD, owed PatchMD fiduciary duties including, but not limited to, a duty of good faith, honesty, care, loyalty, candor, full and fair disclosure and duty to avoid self-dealing.

94.     Shepherd breached his fiduciary duty by, *inter alia*: (a) drawing an annual salary in excess of $600,000 and taking bonuses totaling $75,000 without the knowledge of, or approval from, the other members of PatchMD; (b) forming Patch 4 All, a competing business to PatchMD; (b) transferring, misappropriating, and using PatchMD's Trade Secrets; (c) conspiring with the other Individual Defendants to form Patch 4 All and misappropriate PatchMD's Trade Secrets; and (d) soliciting PatchMD's employees, customers, and vendors.

95.     Laird breached her fiduciary duty by, *inter alia*; (a) forming Patch 4 All, a competing business to PatchMD; (b) transferring, misappropriating, and using PatchMD's Trade Secrets, including PatchMD's Customer Lists, while still serving as Vice President of PatchMD; (c) deleting the Trade Secrets from PatchMD's records prior to resigning; and (d) conspiring with the other Individual Defendants to form Patch 4 All and misappropriate PatchMD's Trade Secrets.

96.     Brake breached her fiduciary duty by, *inter alia*; (a) transferring, misappropriating, and

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

using PatchMD's Trade Secrets, including PatchMD's Accounting Records; (b) converting PatchMD's physical check printing account for Patch 4 All's benefit; (c) conspiring with the other Individual Defendants to form Patch 4 All and misappropriate PatchMD's Trade Secrets; and (d) misrepresenting to PatchMD's board and other members the salary being paid to Shepherd.

97.     Unless preliminarily and permanently enjoined, Shepherd, Laird, and Brake will continue to misappropriate, disclose, and use for their own benefit and to PatchMD's detriment, PatchMD's Trade Secret information.

98.     As the direct and proximate result of Defendants' conduct as aforesaid, PatchMD has suffered and, if Defendants' conduct is not stopped, will continue to suffer, irreparable injury and significant damages for which there is no adequate remedy at law including but not limited to loss of business reputation and good will.

99.     PatchMD seeks temporary, preliminary, and permanent injunctive relief: (i) enjoining Defendants from utilizing PatchMD's Trade Secrets; (ii) mandating that Defendants return and/or provide access to, and then destroy PatchMD's Trade Secrets and confidential and proprietary information in their possession, custody, or control including, but not limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, marketing partners, manufacturers, wholesalers, affiliates, and retailers; (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms; (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018; and (iii) mandating that Defendants return and/or provide access to the Customer Lists and Accounting Records to PatchMD. PatchMD also seeks injunctive relief enjoining Defendants from soliciting or otherwise contacting or interfering with any of PatchMD's past, current, or future employees.

100.     As a direct, proximate, and foreseeable result of Shepherd, Laird, and Brake's conduct, PatchMD has been damaged in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

101.     Shepherd, Laird, and Brake's conduct was oppressive, malicious, fraudulent, and was

1  carried out in bad faith and with conscious disregard for the rights and well-being of PatchMD,

2  thereby warranting the assessment of exemplary and punitive damages against Shepherd, Laird,

3  and Brake in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

4  102.   PatchMD has been required to retain the services of an attorney to pursue its claims against

5  Shepherd, Laird and Brake and is entitled to reasonable attorneys' fees and costs incurred in

6  prosecuting this action.

7  ### SIXTH CAUSE OF ACTION
   ### (Civil Conspiracy Against All Defendants)

8

9  103.   PatchMD repeats and re-alleges each and every allegation set forth above and incorporates

10 them herein by reference as though fully set forth.

11 104.   Defendants, by acting together in concert and pursuant to an agreement amongst

12 themselves, intended to accomplish an unlawful objective for the purpose of harming PatchMD

13 including, but not limited to, misappropriating PatchMD's Trade Secrets.

14 105.   As a direct, proximate, and foreseeable result of Defendants' conduct, PatchMD has been

15 damaged in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

16 106.   Defendants' conduct was oppressive, malicious, fraudulent, and was carried out in bad

17 faith and with conscious disregard for the rights and well-being of PatchMD, thereby warranting

18 the assessment of exemplary and punitive damages against Defendants in an amount to be proven

19 at trial, but which PatchMD alleges is in excess of $15,000.

20 107.   PatchMD has been required to retain the services of an attorney to pursue its claims against

21 Defendants and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this

22 action.

23 ### SEVENTH CAUSE OF ACTION
   ### (Fraudulent Misrepresentation Against Shepherd)

24

25 108.   PatchMD repeats and re-alleges each and every allegation set forth above and incorporates

26 them herein by reference as though fully set forth.

27 109.   Shepherd misrepresented to PatchMD executives and interest holders that he was drawing

28 a salary of less than $25,000 per month as CEO of PatchMD.

DICKINSON WRIGHT PLLC

8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

110. As part of Shepherd's separation from PatchMD, Shepherd also misrepresented to PatchMD that he agreed to relinquish all of his right, title and interest in PatchMD and would not compete with PatchMD for a period of three years.

111. Shepherd knew that his representations were false when he made them because he had been drawing an excessive salary and misusing PatchMD's corporate funds to aid him in forming and operating Patch 4 All in direct competition with PatchMD.

112. Shepherd made these misrepresentations to PatchMD to induce PatchMD to refrain from acting in order to obtain a head start in the creation of Patch 4 All and the misappropriation of PatchMD's Trade Secrets.

113. PatchMD justifiably relied on Shepherd's misrepresentations based on his fiduciary obligations to PatchMD.

114. Shepherd damaged PatchMD by misappropriating, converting, stealing, and using PatchMD's Trade Secrets for his competing business, Patch 4 All, without PatchMD's authorization and without justification.

115. As a result of Shepherd's wrongful actions, PatchMD has, *inter alia*, lost prospective contractual relationships, profits, and goodwill.

116. As a direct, proximate, and foreseeable result of Shepherd's wrongful conduct, PatchMD has been damaged in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

117. Shepherd's conduct was oppressive, malicious, fraudulent, and was carried out in bad faith and with conscious disregard for the rights and well-being of PatchMD, thereby warranting the assessment of exemplary and punitive damages against Shepherd in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

118. PatchMD has been required to retain the services of an attorney to pursue its claims against Shepherd and is entitled to reasonable attorneys' fees and costs incurred in prosecuting this action.

/ / /

/ / /

/ / /

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment Against All Defendants)**

119.    PatchMD repeats and re-alleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

120.    Defendants were unlawfully enriched and appreciated a benefit by misappropriating PatchMD's Trade Secrets and diverting PatchMD's customers, existing and prospective contractual relationships with customers and distributors, leads, and referrals to Patch 4 All without compensation to PatchMD.

121.    Defendants' actions were not justified and it would be inequitable for Defendants to retain any benefit from their wrongful conduct.

122.    As a result of Defendants' action, PatchMD has sustained actual and/or consequential damages in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000.

123.    PatchMD has been required to hire an attorney and expend fees and costs to pursue and protect its legal rights through this action, and it is therefore entitled to restitution and damages in an amount to be determined at trial in addition to attorneys' fees and costs.

## IV.    PRAYER FOR RELIEF

WHEREFORE, PatchMD prays for relief against Defendants as follows:

(a)    For damages against all Defendants, jointly and severally, for their wrongful conduct as set forth herein, in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000;

(b)    For punitive and exemplary damage damages against all Defendants, jointly and severally, for their wrongful, intentional, bad faith conduct as set forth herein, in an amount to be proven at trial, but which PatchMD alleges is in excess of $15,000;

(c)    For disgorgement of Shepherd's excessive and unauthorized salary;

(d)    For disgorgement of Defendants' profits;

(e)    For PatchMD's lost profits;

(f)    For temporary, preliminary, and permanent injunctive relief: (i) enjoining Defendants from utilizing PatchMD's Trade Secrets; (ii) mandating that Defendants return and/or

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

provide access to, and then destroy PatchMD's Trade Secrets and confidential and proprietary information in their possession, custody, or control including, but not limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, marketing partners, manufacturers, wholesalers, affiliates, and retailers; (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms; (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018; and (iii) mandating that Defendants return and/or provide access to the Customer Lists and Accounting Records to PatchMD;

   (g)   For attorneys' fees and costs; and

   (h)   For such other and further relief as the Court may deem just and proper.

DATED this 14th day of February 2018.

DICKINSON WRIGHT PLLC

MICHAEL N. FEDER
Nevada Bar No. 7332
GABRIEL A. BLUMBERG
Nevada Bar No. 12332
HILARY WILLIAMS
Nevada Bar No. 14645
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel:  (702) 550-4400
Fax:  (844) 670-6009
*Attorneys for Plaintiff*

**MTRO**
**DICKINSON WRIGHT PLLC**
MICHAEL N. FEDER
Nevada Bar No. 7332
Email: mfeder@dickinson-wright.com
GABRIEL A. BLUMBERG
Nevada Bar No. 12332
Email: gblumberg@dickinson-wright.com
HILARY WILLIAMS
Nevada Bar No. 14645
Email: hwilliams@dickinson-wright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Tel: (702) 550-4400
Fax: (844) 670-6009
*Attorneys for Plaintiff*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| PATCHMD, LLC, a Nevada Limited Liability Company,<br><br>                              Plaintiff,<br><br>v.<br><br>DENNIS SHEPHERD, an individual; JENNIFER LAIRD, an individual; KYMBIRLEY BRAKE, an individual; JAYME FRASSETT, an individual; NICOLE SANTOS, an individual; PEARL COETZEE, an individual; and PATCH 4 ALL, INC., a California corporation;<br><br>                              Defendants. | CASE NO. A-18-769567-B<br>DEPT. 25<br><br><br>**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION ON AN ORDER SHORTENING TIME** |

Plaintiff, PatchMD, LLC, ("PatchMD" or "Plaintiff"), by and through counsel, the law firm of Dickinson Wright PLLC, hereby respectfully requests that the Court:

1. Enter a Temporary Restraining Order, and thereafter a Preliminary Injunction:

a.      Enjoining Defendants from utilizing PatchMD's confidential and proprietary: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, manufacturers, wholesalers, affiliates, and retailers;  (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms;  (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and

1

1   (g) marketing and advertising materials created for PatchMD prior to January 16, 2018 (the "Trade

2   Secrets");

3           b.      Requiring Defendants to return all of PatchMD's Trade Secrets and any

4   documents or communications relating to the Trade Secrets;

5           c.      Requiring Defendants to destroy all copies of PatchMD's Trade Secrets and

6   any documents or communications relating to the Trade Secrets;

7           d.      Enjoining Defendants from soliciting or otherwise contacting or interfering

8   with any of Plaintiff's past, current, or future employees; and

9           e.      Enjoining Defendants from soliciting or otherwise contacting or interfering

10   with any of Plaintiff's vendors, marketing partners, suppliers, manufacturers, formula

11   providers/creators, consultants and customers.

12           2.      Enter an order shortening time to set the hearing on PatchMD's Application for

13   Temporary Restraining Order and Motion for Preliminary Injunction, and maintain the temporary

14   restraining order in effect until the date of said hearing.

15         This Application and Motion is based upon the following Memorandum of Points and

16   Authorities; the pleadings and papers already on file herein, including PatchMD's Complaint (the

17   "Complaint"); the Declaration of Michael N. Feder, Esq. set forth below; the Declaration of Mark

18   Nielsen attached hereto as Exhibit 1 and the exhibits attached thereto; the Declaration of Earl

19   Hailey attached hereto as Exhibit 2 and the exhibits attached thereto; and any argument of counsel

20   that may be permitted at the hearing in this matter.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

**DECLARATION OF MICHAEL N. FEDER, ESQ. IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER, MOTION FOR PRELIMINARY INJUNCTION, AND EX PARTE APPLICATION FOR ORDER SHORTENING TIME**

Michael N. Feder, Esq., being first duly sworn, declares as follows:

1.     I am an attorney licensed to practice law in the State of Nevada and I am a member of the law firm of Dickinson Wright PLLC, counsel for PatchMD. I have personal knowledge of all facts and circumstances set forth in this declaration unless otherwise stated upon information and belief.

2.     This declaration is submitted in support of the Application for Temporary Restraining Order and Motion for Preliminary Injunction on an Order Shortening Time ("Application").

3.     The Court should grant PatchMD's Application on an emergency basis because Plaintiff's will suffer immediate and irreparable loss before the parties to this action or their attorneys can be heard in opposition.

4.     As set forth more fully in PatchMD's Complaint, the Defendants in this matter have misappropriated Trade Secrets and confidential information belonging to PatchMD, including, but not limited to, PatchMD's confidential and proprietary regarding: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, marketing partners, manufacturers, wholesalers, affiliates, and retailers; (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms; (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018 (the "Trade Secrets"). Defendants must be immediately enjoined from using PatchMD's Trade Secrets because Defendants are actively attempting to replace PatchMD in PatchMD's business relationships by utilizing PatchMD's Trade Secrets. Moreover, Defendants are falsely representing to patch creators, suppliers, and customers that PatchMD is aware of and approves of Defendants' use of PatchMD's Trade Secrets.

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

3

5.      Based upon the information set forth herein, Defendants are presently interfering with and causing immediate damage to Plaintiff's business by contacting and/or withholding Plaintiff's clients, employees, vendors, prospects, marketing partners, suppliers, manufacturers, patch providers/creators and the like in an attempt to build their own competing business and undermine Plaintiff's business. Based upon the information set forth herein, Defendants have interfered with and affected PatchMD's relationship with one of PatchMD's suppliers as recently as January 30, 2018.

6.      Defendants' actions are impairing Plaintiff's goodwill and reputation as well as jeopardizing its immediate and existing client relationships and relationships with its vendors, employees, clients, marketing partners, suppliers, manufacturers, patch providers/creators and the like.

7.      If Plaintiff loses its relationships with vendors, employees, clients, marketing partners, suppliers, manufacturers, patch providers/creators and the like due to loss of reputation and goodwill caused by Defendants' fraudulent conduct including if Plaintiff's Trade Secrets lose their status as trade secrets due to Defendants unauthorized disclosure and/or use of Plaintiff's Trade Secrets, Plaintiff's business will be immediately, detrimentally and irreparably damaged.

8.      Therefore, unless the Application is granted, Plaintiff will be irreparably harmed.

9.      Given the immediate and irreparable harm being caused by Defendants, it is imperative that this matter be heard on shortened time.

10.     A copy of the Complaint and this Application have been or will be emailed to Dennis Shepherd, Jennifer Laird, and Kymbirley Brake at their last known email addresses in their individual capacities and on behalf of Patch 4 All and to Jayme Frassett, Nicole Santos, and Pearl Coetzee at what I believe to be their Patch 4 All email addresses on February 16, 2018.

EXECUTED this 16th day of February, 2018.

_____
MICHAEL N. FEDER, ESQ.

4

## ORDER SHORTENING TIME

Good Cause Appearing Therefore,

IT IS HEREBY ORDERED that the time for hearing PatchMD's Application for Temporary Restraining Order and Motion for Preliminary Injunction is shortened to be heard on the _____ day of _____, 2018, at _____ a.m./p.m., or as soon thereafter as the parties may be heard.

_____
DISTRICT COURT JUDGE

Respectfully Submitted By:

DICKINSON WRIGHT PLLC

_____
MICHAEL N. FEDER, NV Bar No.7332
GABRIEL A. BLUMBERG, NV Bar No. 12332
HILARY WILLIAMS, NV Bar No. 14645
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Tel: (702) 550-4400
*Attorneys for Plaintiff*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I. <u>INTRODUCTION</u>

Defendants must be restrained from exploiting and profiting from PatchMD's Trade Secrets while harming PatchMD who rightfully owns the Trade Secrets and should be the one reaping the benefits associated with them. PatchMD has developed and guarded the Trade Secrets since its inception in 2009 and has used the Trade Secrets to garner goodwill, develop numerous business relationships, create a valuable client base, and employ a complex manufacturing and distribution system for its proprietary patches. Despite serving as PatchMD's CEO during this same period, Shepherd repeatedly breached his fiduciary duty to PatchMD by drawing an unreasonably large salary, issuing himself unauthorized bonuses, and acting in a manner inconsistent with PatchMD's best interests.

Upon learning of Shepherd's historical misdeeds, the remaining members of PatchMD elected to remove Shepherd as CEO and began negotiating the terms of Shepherd's separation from PatchMD membership.  After agreeing to the terms of the separation, and in complete dereliction of his fiduciary obligations and contrary to his representations to PatchMD, Shepherd began intentionally interfering with PatchMD's business operations by forming a competing entity, Patch 4 All, freezing PatchMD's credit cards, and developing plans and executing schemes to misappropriate PatchMD's Trade Secrets and steal the majority of PatchMD's remaining employees for the benefit of Patch 4 All.

To make matters worse, Shepherd conspired with PatchMD's Vice President Jennifer Laird ("Laird"), PatchMD's CFO Kymbirley Brake ("Brake"), PatchMD's Creative Director Jayme Frassett ("Frassett"), PatchMD's Wholesale Accounts Manager Pearl Coetzee ("Coetzee"), and PatchMD's marketing and social media resource Nicole Santos ("Santos") to misappropriate PatchMD's Trade Secrets while they still worked for PatchMD.  In furtherance of their conspiracy, Laird inappropriately downloaded PatchMD's customer and online subscriber lists (the "Customer Lists"), purchase order information, prospective distributors, and potential marketing plans and sent them to Patch 4 All.  In addition, Laird deleted numerous PatchMD electronic files and conspired with Shepherd to solicit additional PatchMD employees to begin working at Patch 4 All, as well as contacting PatchMD suppliers or business partners on behalf of Shepherd and Patch4All while still being paid by PatchMD.  Furthermore, Brake misappropriated and withheld PatchMD's accounting records as contained in its QuickBook files (the "Accounting Records") and has failed to release the Master Administrator credentials for the QuickBooks Online account belonging to PatchMD.

Defendants have used PatchMD's Trade Secrets and confidential information to, *inter alia*: (1) operate Patch 4 All; (2) usurp PatchMD's online subscriber list; (3) to obtain a contractual business relationship with PatchMD's manufacturer and packaging supplier; and (4) interfere with PatchMD's current customers and patch formulator. All the while, Defendants have been misrepresenting to customers, formulators, suppliers and packagers that Shepherd's removal from

6

PatchMD was mutually agreed upon by Shepherd and PatchMD and that PatchMD's proprietary information belonged to Patch 4 All.

Unfortunately, Defendants' nefarious conduct will continue to irreparably harm PatchMD absent immediate injunctive relief. Therefore, this Court should immediately enter injunctive relief to preclude Defendants from continuing to profit from PatchMD's Trade Secrets while at the same time irreparably tarnishing PatchMD's goodwill, business reputation, and client relationships. Accordingly, PatchMD requests that this Court grant Plaintiff temporary, preliminary, and permanent injunctive relief: (i) enjoining Defendants from utilizing PatchMD's Trade Secrets; (ii) mandating that Defendants return and/or destroy PatchMD's Trade Secrets and confidential and proprietary information in their possession, custody, or control including, but not limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, marketing partners, manufacturers, wholesalers, affiliates, and retailers; (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms; (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018 (the "Trade Secrets"); and (iii) mandating that Defendants return access to the original Customer Lists and Accounting Records to PatchMD.

## II. STATEMENT OF RELEVANT FACTS

In or about September 2009, Shepherd and Earl Hailey ("Hailey") formed PatchMD to sell vitamins and supplements in a topical patch that utilizes the skin for the delivery system. Hailey Decl. ¶ 3. PatchMD is in the business of developing and selling topical patches that utilizes the skin for the delivery system of vitamins and supplements. The patches contain innovative technology including in their formulations and three layer design. Hailey Decl. ¶ 4. As part of its ongoing business, PatchMD distributes patches to retailers and wholesalers and sells patches directly to customers through its online platforms, PatchMD.com, PatchRevolution.com, and PatchPlan.com. Hailey Decl. ¶ 5.

///

7

PatchMD possesses Trade Secrets and has kept these Trade Secrets confidential by, among other things, drafting, preparing, and distributing nondisclosure agreements with employees and third parties, communicating nondisclosure expectations, and instituting policies to protect the Trade Secrets. *Id.* at ¶¶ 8-9.

The confidential and proprietary nature of the Trade Secrets has been repeatedly acknowledged by PatchMD executives and employees, including Shepherd, who understand the importance of protecting the Trade Secrets from outside businesses and third-parties and enforcing PatchMD's confidentiality policies. *Id.* at ¶ 10; Ex. 2-A.

**Shepherd Begins Taking Actions Contrary to PatchMD's Interests and Is Removed as CEO**

In 2017, while still performing the role of PatchMD's CEO, Shepherd, without the knowledge of, or authority from, the other members of PatchMD, unilaterally increased his monthly salary to $50,000 per month and paid himself an unauthorized bonus of $75,000.  Hailey Decl. ¶ 11.  This salary was well in excess of the monthly salary that Shepherd and Brake had misrepresented Shepherd was drawing.  *Id.*  Upon learning of Shepherd's exorbitant salary and unauthorized bonus, Hailey confronted Shepherd about the need to distribute profits to the other members of PatchMD, but Shepherd repeatedly told Hailey that he did not care about the other members and would only agree to make distributions to them upon a sale of PatchMD.  *Id.* at ¶ 12.

Upon learning of Shepherd's improper actions, including, but not limited to, drawing an annual salary in excess of $600,000, paying himself an unapproved bonus, and improperly using corporate funds, the remaining interest holders in PatchMD elected to remove Shepherd as CEO.  *Id.* at ¶ 13.  As part of Shepherd's separation from PatchMD, Shepherd and PatchMD came to an understanding whereby Shepherd agreed to relinquish all of his right, title and interest in PatchMD and agreed not to compete with PatchMD for a period of three years.  *Id.* at ¶ 14.

**Shepherd Forms a Competing Entity, Patch 4 All, Using PatchMD's Trade Secrets and Employees**

Soon after being removed as CEO and agreeing not to compete with PatchMD, or possibly even earlier, Shepherd, along with Laird, began interfering with PatchMD's business relationships and economic expectancy.  *See generally* Nielsen Decl.  Shepherd disabled PatchMD's American

8

Express cards that were used to pay for PatchMD's advertisements and daily operational needs and also tried changing the GoDaddy account registration information for PatchMD's website domain names to reference himself and persons and/or entities over which he had control to the detriment of PatchMD.  Nielsen Decl. ¶ 4.

Shepherd also began contacting and soliciting PatchMD executives, employees, and consultants in an effort to get them to work with him at Patch 4 All, an entity he had formed to directly compete with PatchMD and funded using the excessive salary he had been taking from PatchMD. *Id.* at ¶¶ 5, 10.  Shepherd improperly and successfully solicited at least the following five PatchMD executives, employees, and/or consultants to assist with the creation of Patch 4 All and to then leave PatchMD: PatchMD's Vice President Laird, PatchMD's CFO Brake, PatchMD's Creative Director Frassett, PatchMD's Wholesale Accounts Manager Coetzee, and PatchMD's marketing and social media resource Santos. *See id.* at ¶ 11.

Not only did these PatchMD employees agree to work for Patch 4 All, but they also conspired with Shepherd to access and transfer PatchMD's Trade Secrets to Patch 4 All. *Id.* at ¶ 12.  In furtherance of their scheme to develop Patch 4 All, Laird forwarded numerous emails regarding PatchMD's Trade Secrets, including, *inter alia*, PatchMD's confidential and proprietary purchase order information, customer lists, and marketing strategy directly from her PatchMD email address to her already established Patch 4 All email address. *Id.* at ¶ 13; Ex. 1-G, 1-H, 1-I, 1-J.  In addition, Laird also misappropriated and withheld approximately twelve customer and prospective customer mailing lists vital to PatchMD's business operations.  *Id.*  Although Laird has returned the unsubscribe data for one of the twelve lists, and thereby admitted taking PatchMD's Trade Secrets, she has failed and refused to return the remaining unsubscribe lists, thereby precluding PatchMD from communicating with thousands of customers and prospects. *Id.*

Furthermore, Laird also attempted to delete Trade Secrets files from PatchMD's filing system prior to leaving PatchMD in an effort to give a competitive advantage to Patch 4 All. *Id.* at ¶ 15.  Laird also solicited PatchMD's offshore customer service representatives to work for Patch 4 All after PatchMD had spent a year investing in training these individuals in PatchMD's business model. *Id.* at ¶ 14.

9

Further, Brake has misappropriated and withheld PatchMD's accounting records as contained in its QuickBook files, which records are vital to PatchMD's business operations. *Id.* at ¶ 17. Brake still retains the Master Administrator credentials on PatchMD's Online QuickBooks account, which only she can transfer to PatchMD. *Id.*

Patch 4 All also converted PatchMD's physical check printing account without notice to, or authorization from, PatchMD. *Id.* at ¶ 16. Indeed, PatchMD's check provider informed PatchMD that the account now had a contact email of kymbirleyerin@hotmail.com, a California telephone number, and a physical address of Patch4All, Inc. at 17284 Newhope St., Suite 217, Fountain Valley, CA 92708. *Id.*

**Patch 4 All Mirrors PatchMD's Business Model and Uses PatchMD's Trade Secrets to Compete Directly with PatchMD and Reduce PatchMD's Business**

Similar to PatchMD, Patch 4 All sells patches that provide vitamins and supplements by utilizing the skin for the delivery system. Nielsen Decl. ¶ 6; Exs. 1-A-1-D. According to Patch 4 All's Website, Patch 4 All sells patches under brand name Ohana, as well as other brand names. Nielsen Decl. ¶ 7; Ex. 1-A. The Ohana patch sold by Patch 4 All uses PatchMD's confidential and proprietary patch formulas and patch design, and Patch 4 All markets the Ohana patch using, *inter alia,* PatchMD's confidential and proprietary customer lists. Nielsen Decl. ¶¶ 8-9.

Defendants are also using patch formulas and patch designs exclusively licensed to PatchMD in Patch 4 All's regular course of business, and Shepherd is misrepresenting to third parties that PatchMD is fully aware of his actions and, further, that he still owns certain proprietary formulas for PatchMD's patches. *See id.* at ¶ 18.

Moreover, PatchMD is informed and believes and thereupon alleges that Defendants are using these misrepresentations to form or attempt to form business relationships with PatchMD's confidential formulators, suppliers, wholesalers, and online market groups. *Id.* at ¶ 19.

Defendants' actions have caused and will continue to cause irreparable harm to PatchMD. *Id.* at ¶ 20. Without injunctive relief, Defendants will continue to be irreparably harmed by Defendants' misappropriation and conversion of PatchMD's Trade Secrets in the operation of Patch 4 All, including Defendants' continual contact of individuals and entities on PatchMD's

confidential and proprietary customer, prospect, marketing partner, manufacturer, and supplier lists, and continue to garner and benefit from PatchMD's goodwill and reputation through the use of PatchMD's Trade Secrets to the detriment of PatchMD. *Id.* at ¶ 21.

# III. LEGAL ARGUMENT

**A.   The Court Should Enter a Temporary Restraining Order**

    **1.   Legal Standard for Granting a Temporary Restraining Order**

NRCP 65(b) provides:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.
> …
> In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if the party does not do so, the court shall dissolve the temporary restraining order.

NRCP 65(b).

    Equity will "restrain tortious acts where it is essential to preserve a business or property interest." *Guion v. Terra Marketing of Nevada, Inc.*, 90 Nev. 237, 240, 523 P.2d 847 (1974). The issuance of a temporary restraining order is proper in this case.

    **2.   Plaintiff Will Suffer Irreparable Harm If a Temporary Restraining Order Is Not Issued[1]**

    PatchMD undoubtedly will suffer irreparable harm without an adequate remedy at law if Defendants are allowed to continue utilizing PatchMD's Trade Secrets and confidential information. Irreparable harm is presumed where a party misappropriates a trade secret. *Excellence*

---

[1] The Feder Declaration above satisfies the second element requiring attorney certification of the notice given or the reasons why notice need not be given.

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

1  *Cmty. Mgmt. v. Gilmore*, 351 P.3d 720, 724 (Nev. 2015).  Moreover, the Nevada Supreme Court

2  has found that irreparable harm occurs when a party unreasonably interferes with a business when,

3  for example, the business's former executive solicits the business's customers, induces employees

4  to leave the business, and discloses confidential information and trade secrets such as contracts,

5  pricing structures, customer lists, and product designs after purchasing a competing business.

6  *Finkel v. Cashman Professional, Inc.*, 270 P.3d 1259, 1263 (Nev. 2012).

7         Here, PatchMD easily satisfies the requirements to obtain injunctive relief. First, it is

8  apparent that Defendants have misappropriated PatchMD's Trade Secrets. *See, e.g.*, Nielsen Decl.

9  ¶¶ 8-17. Defendants are using PatchMD's proprietary patch formulas and designs, PatchMD's

10 confidential manufacturing and supply sources, PatchMD's Accounting Records, and PatchMD's

11 Customer Lists advertise and profit from its Ohana patches. Nielsen Decl. ¶¶ 8-9, 13, 17. Second,

12 similar to the situation in *Finkel*, where the Nevada Supreme Court found that injunctive relief was

13 appropriate, Defendants have solicited PatchMD's customers, induced at least five of PatchMD's

14 employees to leave PatchMD's employment to work for Patch 4 All, and improperly converted

15 marketing plans for Patch 4 All's benefit. *See* Nielsen Decl. ¶¶ 9-18; Ex. 1-F, 1-J. Indeed, Laird

16 was even sending PatchMD's Trade Secrets to Patch 4 All while she remained employed by

17 PatchMD to further the interests of Patch 4 All to the detriment of PatchMD. Ex. 1-G, 1-H, 1-I.

18        Additionally, Defendants have contacted PatchMD's customers, formulators and suppliers

19 to spread falsehoods concerning Shepherd's removal from PatchMD. Nielsen Decl. ¶ 18. Namely,

20 Defendants have falsely "informed" customers, formulators, and suppliers that PatchMD is fully

21 aware of Defendants' actions and that Defendants own certain proprietary formulas for PatchMD's

22 patches. *Id.*

23        Furthermore, Shepherd directly harmed PatchMD's reputation and goodwill by interfering

24 with its ability to advertise and provide services to its customers when he disabled PatchMD's

25 American Express cards, which were used to pay for PatchMD's advertisements and daily

26 operational needs. Nielsen Decl. ¶ 4. Moreover, Shepherd attempted to usurp PatchMD's website

27 domain names, which are used to project PatchMD's image to the public, by changing the domain

28

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

names' contact information to reference himself and persons and/or entities over which he had control. *Id.*

Based on these recurring bad acts by Defendants and Defendants' likelihood of continuing to irreparably tarnish PatchMD's goodwill, reputation, and business relationships absent injunctive relief, the Court should enter a temporary restraining order enjoining Defendants from utilizing PatchMD's Trade Secrets and mandating that Defendants return and/or destroy any information relating to PatchMD's Trade Secrets.

### 3. The Bond Should be Minimal

NRCP 65(c) requires movants to post a bond before issuance of the temporary restraining order. If this Court requires the posting of a bond, Plaintiff requests that such bond be minimal. The temporary restraining order is only attempting to prevent Defendants from further misappropriating PatchMD's Trade Secrets obtained by Defendants' wrongful conduct and Shepherd and Laird's breach of fiduciary duties. Instead, the temporary restraining order seeks to enjoin Defendants from inappropriately and unfairly enjoying the fruits of their prohibited conduct. As a consequence, Defendants will not suffer any compensable damages from the entry of the temporary restraining order and Plaintiff therefore requests that the bond be set at a *de minimus* amount, not to exceed $500.00.

**B.** **After Entering a Temporary Restraining Order, the Court Should Issue an Order to Show Cause to Defendants and Set a Hearing on Plaintiff's Motion for Preliminary Injunction**

The issuance of a temporary restraining order will briefly reduce the threat of immediate and irreparable harm to Plaintiff, but a preliminary injunction is necessary to ensure Defendants do not resume irreparably harming Plaintiff prior to the Court adjudicating the merits of this matter.

### 1. A Preliminary Injunction Is Necessary and Appropriate

The issuance of mandatory and restrictive injunctions is a well-settled remedy in Nevada. *See City of Reno v. Metley*, 79 Nev. 49, 61, 378 P.2d 256, 262 (1963); *see also Memory Gardens of Las Vegas, Inc. v. Pet Ponderosa Memorial Gardens, Inc.*, 88 Nev. 1, 492 P.2d 1123 (1972); *Harmon v. Tanner Motor Tours of Nevada, Ltd.*, 79 Nev. 4, 377 P.2d 622 (1963). In fact, NRS 33.010 provides:

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

An injunction may be granted in the following cases:

    1.   When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

    2.   When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.

    3.   When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.

NRS 33.010.

For a preliminary injunction to issue, "the moving party must show that there is a likelihood of success on the merits and that the nonmoving party's conduct, should it continue, would cause irreparable harm for which there is no adequate remedy at law." *Department of Conservation and Natural Resources, Div. of Water Resources v. Foley*, 109 P.3d 760, 762 (2005). Equity will "restrain tortious acts where it is essential to preserve a business or property interest." *Guion v. Terra Marketing of Nevada, Inc.*, 90 Nev. 237, 240, 523 P.2d 847 (1974).

The Court should consider the following four factors when determining whether it should enter preliminary injunctive relief:

1.    The threat of immediate, irreparable harm;

2.    The likelihood that the party seeking a preliminary injunction will be successful on the merits of the underlying action;

3.    Whether the balance of interests weighs in favor of the party seeking the preliminary injunction; and

4.    Whether issuance of the preliminary injunction is in the public's interest.

*Clark County School District v. Buchanan*, 112 Nev. 1146, 924 P.2d 716 (1996); *see also Number One Rent-A-Car v. Ramada Inns*, 94 Nev. 779, 780, 587 P.2d 1329, 1330 (1978) (holding that a "preliminary injunction to preserve the status quo is normally available upon a showing that the party seeking it enjoys a reasonable probability of success on the merits and that the defendant's conduct, if allowed to continue, will result in irreparable harm for which compensatory damages is an inadequate remedy").

14

Here, it is apparent that Plaintiff satisfies these elements and is entitled to a preliminary injunction preventing Defendants from further colluding to erode Plaintiff's legitimate proprietary interests in its Trade Secrets, goodwill, and business relationships.

### 2. Plaintiff Will Suffer Irreparable Harm if Defendants are Allowed to Continue Utilizing Plaintiff's Trade Secrets

As set forth more fully above in Section III(A)(2), *supra*[2], Plaintiff will suffer irreparable harm including, but not limited to, loss of reputation and goodwill, if Defendants are allowed to continue utilizing PatchMD's Trade Secrets and confidential information including, but not limited to, utilizing PatchMD's patch formulas, client and online subscriber lists, and information about PatchMD's business relationships to solicit and convert such relationships and profit from PatchMD's reputation and goodwill. As previously explained, Defendants are actively eroding the foundation of goodwill, reputation and relationships PatchMD relies upon to conduct its business, and Defendants are using the Trade Secrets and confidential information Defendant's wrongfully obtained from PatchMD to do it. Damages will not repair or replace the goodwill, reputation or relationships lost due to Defendants' malfeasance.

### 3. Plaintiff Is Likely to Succeed on the Merits of Its Claims

Plaintiff has asserted claims for, *inter alia*, violation of the Nevada Uniform Trade Secrets Act, conversion, intentional interference with contractual relationships, intentional interference with prospective economic advantage, and breach of fiduciary duty in its Complaint and is likely to prevail on each claim.[3]

### a. Defendants Have Violated the Nevada Trade Secrets Act

Plaintiff is likely to prevail on its claim for violation of the Nevada Trade Secrets Act. NRS 600A.040 permits injunctive relief for actual or threatened misappropriation of trade secrets. NRS

---

[2] The analysis of irreparable harm for a temporary restraining order is practically identical to the analysis required for a preliminary injunction. *First 100, LLC v. Omni Financial, LLC*, 2016 WL 3511252 (D. Nev. June 27, 2016).

[3] To show a reasonable probability of success on the merits, movants are not required to prove that they will ultimately prevail in the lawsuit. *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success").

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

600A.040. Whether information qualifies as a trade secret may be determined by analyzing factors such as the extent the information is known outside of the business, the difficulty in acquiring the information, whether the information was confidential, the extent and manner the employer guarded the information, the former employee's knowledge of customer data and whether the information is known to the employer's competitors. *Finkel v. Cashman Professional, Inc.*, 270 P.3d 1259, 1264 (Nev. 2012). Trade secrets may include contracts, processes, prices, costs, discounts, future plans, business affairs, technical matters, customer lists, product designs, copyrights and other business-related confidential information. *Id.*

Misappropriation is defined in NRS 600A.030(2) as:

> (a) Acquisition of the trade secret of another by a person by improper means
> …
> (c) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (1) Used improper means to acquire knowledge of the trade secret; [or]
>> (2) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>>> (I) Derived from or through a person who had used improper means to acquire it;
>>> (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

NRS 600A.030(2).

Furthermore, "improper means" includes a willful breach or willful inducement of a breach of a duty to maintain secrecy or a breach of duty imposed by common law. NRS 600A.030(1)(d), (e).

Here, Defendants misappropriated PatchMD Trade Secrets including, but not limited to:

- patch formulations
- pricing information
- client lists and contact information
- manufacturer information

16

DICKINSON WRIGHT PLLC

8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

- wholesaler/distributor information

- retailer information

- patch formula providers/creators

- search engine optimization strategies including keywords used and targeted in relation to PatchMD's online platforms

- online advertising strategies, bids, commission rates, display networks, affiliate sites, and agencies used

- marketing and advertising materials created for PatchMD prior to January 16, 2018

These categories of information qualify as trade secrets because, applying the factors in *Finkel*: (1) the information is difficult to obtain (2) the information is confidential and secret, (3) Plaintiff identified its intent to keep the information confidential to employees and third parties and such intent was confirmed by Shepherd and Laird, and (4) Shepherd and Laird acquired intimate knowledge of PatchMD's Trade Secrets in their roles as owners and/or executives of PatchMD and such information was unknown to PatchMD's competitors until Shepherd and Laird improperly disclosed such information to their competing entity Patch 4 All.  Hailey Decl. ¶¶ 8-10; 2-A.

Indeed, Shepherd, Laird, and Brake, as executives of PatchMD, had a fiduciary obligation to maintain the secrecy of PatchMD's confidential information. *See In re Amerco Derivative Litig.*, 252 P.3d 681, 701 (Nev. 2011). As explained further in Section III(B)(3)(c), they willfully breached their duty to maintain secrecy, their duty of loyalty and their duty to avoid self-dealing. In fact, despite acknowledging that PatchMD's Trade Secrets were intended to be confidential and should be treated as Trade Secrets, Defendants conspired to disclose PatchMD's Trade Secrets. *See* Hailey Decl. ¶ 10. Laird was even so brazen as to send PatchMD Trade Secrets from her PatchMD email account to her Patch 4 All email account. Ex. 1-G, 1-H, 1-I.

After wrongfully misappropriating PatchMD's Trade Secrets, Defendants compounded their wrongful conduct by using the Trade Secrets to operate Patch 4 All, including, but not limited to, contacting PatchMD's clients using PatchMD's Customer Lists, using PatchMD's suppliers, using PatchMD's Accounting Records, converting PatchMD's checking account, and utilizing

17

PatchMD's proprietary patch formulas. *See* Nielsen Decl. ¶¶ 8-9, 13-18. Indeed, it would have been impossible for Defendants to have formed and began operating Patch 4 All in such a short time span absent their wrongful misappropriation of the Trade Secrets.

Based on the foregoing, it is clear that Plaintiff has a strong likelihood of prevailing on its claim for violation of Nevada's Trade Secrets Act.

**b.      Defendants Converted Plaintiffs' Trade Secrets and Confidential Information**

Plaintiff is likely to prevail on its claim for conversion. Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *MC Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 542-43 (Nev. 2008). Intangible personal property may be subject to conversion and thus exercising a right that belongs to another may give rise to such a claim. *Id.* at 538-39. Conversion does not require wrongful intent and is not excused by care, good faith or lack of knowledge. *Id.* at 542-43.

Here, Defendants wrongfully converted PatchMD's Trade Secrets and confidential information by utilizing them as described in Section III(B)(3)(a). Namely, Defendants used PatchMD's Trade Secrets, confidential information, and other proprietary information to harm PatchMD and interfere with PatchMD's current and prospective clients and contractual relationships, which rightfully belong to PatchMD by virtue of its superior technology, reputation, hard work and years of developing goodwill. Therefore, Plaintiff is likely to prevail on its claim for conversion against Defendants.

**c.   Defendants   Intentionally   Interfered   with   PatchMD's   Business Relationships**

Plaintiff has a meritorious claim against Defendants for intentional interference with contractual relations. Under Nevada law, such a claim exists where: (1) there exists a valid contract between plaintiff and third party; (2) Defendant knew of the contract; (3) Defendant committed intentional acts intended or designed to disrupt the contractual relationship; (4) there was an actual

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

disruption of the contract; and (5) Plaintiff sustained damages as a result. *Hilton Hotels Corp. v. Butch Lewis Productions, Inc.*, 862 P.2d 1207, 1210 (Nev. 1993).

Here, PatchMD has contractual or implied contractual business relationships with its customers, vendors, employees, marketing partners, manufacturers, wholesalers, and suppliers. *See* Nielsen Decl. ¶¶ 17-18. Defendants undoubtedly knew of these contracts by virtue of Laird's position as Vice President of PatchMD and Shepherd's position as CEO as PatchMD. Hailey Decl. ¶¶ 7, 10. Using this knowledge, Defendants then intentionally attempted to interfere with such contracts. Nielsen Decl. ¶¶ 17-18. Similarly, Defendants have also attempted to interfere with PatchMD's contracts with its clients and packagers by misrepresenting the facts regarding Shepherd's removal as CEO. *See id.* These misrepresentations tainted PatchMD's goodwill and reputation and disrupted PatchMD's contracts with its formulators, clients and suppliers. Nielsen Decl. ¶¶ 19-20. As a result, PatchMD is likely to succeed on its claim for intentional interference with contractual relationships.

### d. Defendants Intentionally Interfered with PatchMD's Prospective Economic Advantage

PatchMD is likely to prevail on its claim against Defendants for intentional interference with prospective economic advantage. The elements for intentional interference with prospective economic advantage are: (1) a prospective contractual relationship exists between the plaintiff and a third party; (2) defendant had knowledge of the prospective relationship; (3) defendant had the intent to harm the plaintiff by preventing the relationship; (4) defendant had no privilege or justification; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *In re Americo Derivative Litig.*, 252 P.3d 681 (Nev. 2011).

Here, in addition to the actual and implied contracts referenced in Section III(B)(3)(d), Defendants gained knowledge of a list of PatchMD's prospective contractual relationships when they improperly downloaded and used PatchMD's Customer Lists. Nielsen Decl. ¶ 13. Defendants then used this information to advertise their competing Ohana patches to PatchMD's prospective client base in an effort to harm PatchMD and deprive it of prospective business.

19

1   Nielsen Decl. ¶¶ 9, 19. Defendants had no privilege or justification for their interference and their

2   conduct has precluded PatchMD from obtaining certain business and has irreparably harmed

3   PatchMD's reputation and goodwill. *See* Nielsen Decl. ¶¶ 19-20.

4                   **e.   Shepherd, Brake, and Laird Breached Their Fiduciary Duties to PatchMD**

5          Plaintiff also has a meritorious claim for breach of fiduciary duty. Defendant Shepherd, as

6   CEO of PatchMD, Defendant Brake, as CFO of PatchMD, and Defendant Laird, as Vice President

7   of PatchMD, owed fiduciary duties to PatchMD. *See In re Amerco Derivative Litig.*, 252 P.3d 681,

8   701 (Nev. 2011) (corporate officers owe duty of loyalty to corporation); *White Cap Indus., Inc. v.*

9   *Ruppert*, 67 P.3d 318, 319 (Nev. 2003) (finding that a district sales manager has a fiduciary duty

10  to his employer); *see also Tousa Homes Inc. v. Phillips*, 363 F.Supp.2d 1274, 1280 (D. Nev. 2005)

11  ("...an employee generally owes his employer a duty of loyalty respecting prospective business

12  opportunity...")

13         Here, Shepherd, Brake, and Laird routinely and repeatedly breach their fiduciary duties by,

14  *inter alia*:

15             •   conspiring with each other to begin a competing business and harm PatchMD;

16             •   misappropriating PatchMD's Trade Secrets while still employed with PatchMD for

17                 use at Patch 4 All;

18             •   soliciting PatchMD's employees to join Patch 4 All while still employed at

19                 PatchMD;

20             •   attempting to delete PatchMD's Trade Secrets from PatchMD's database; and

21             •   neglecting duties and obligations to PatchMD to focus on forming Patch 4 All

22  *See generally* Nielsen Decl.; Section III(B)(3)(a) (misappropriating trade secrets). Moreover,

23  Shepherd paid himself an exorbitant salary in excess of $600,000 and took a bonus of $75,000 in

24  late 2017 without authorization to serve his own self-interest while neglecting to provide

25  distributions to other PatchMD interest holders and to the detriment of PatchMD. Hailey Decl. ¶

26  11.

27         Based upon the foregoing, Plaintiff is likely to prevail upon its claim for breach of fiduciary

28  duty against Shepherd and Laird.

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

### 4.     The Balance of Hardships Weighs in Favor of Plaintiff

The balance of hardships weighs in favor of Plaintiff because while Defendants continue to utilize PatchMD's Trade Secrets, PatchMD suffers: (1) loss of goodwill; (2) loss of reputation; (3) the threat of the continued disclosure of PatchMD's Trade Secrets; and (4) loss of current and prospective contractual relationships with vendors and clients that it has worked for many years to build. Conversely, the Defendants would only be temporarily delayed from improperly soliciting such vendors and clients and temporarily precluded from disclosing PatchMD's Trade Secrets to wrongfully produce and sell patches using PatchMD formulas. Moreover, instead of honoring their fiduciary duties to PatchMD, Shepherd and Laird used their positions of trust as CEO and Vice President of PatchMD to amass confidential information and reap profits for themselves that rightfully belong to PatchMD. Defendants should not be allowed to profit from their wrongful acts to PatchMD's detriment and thus the balance of equities weighs heavily in favor PatchMD and granting injunctive relief.

### 5.     The Public Interest Strongly Favors Granting an Injunction

If Defendants are allowed to carry out their scheme, it would undermine the trust required to conduct business and operate businesses across the State. Businesses will become inefficient as executives become suspicious of each other and refuse to share information concerning common endeavors if the threat of executives absconding with company trade secrets without recourse is allowed to continue. Therefore, the public interest weighs in favor of granting the injunction.

### 6.     The Bond for an Injunction Should Be Nominal

Similar to the temporary restraining order, the Court should only require a nominal bond for the preliminary injunction because the injunction is only attempting to prevent Defendants from further misappropriating and converting PatchMD's Trade Secrets obtained by Defendants' wrongful conduct and Shepherd and Laird's breach of their fiduciary duties. Therefore, Defendants will suffer no compensable damages because of the preliminary injunction and Plaintiff requests that the bond be set at a *de minimus* amount, in an amount not to exceed $500.

///

///

21

## IV. <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that this Court enter a temporary restraining order, grant a preliminary injunction in its favor, and require only a minimal bond.

Dated this *16th* day of February, 2018.

DICKINSON WRIGHT PLLC

MICHAEL N. FEDER
Nevada Bar No. 7332
GABRIEL A. BLUMBERG
Nevada Bar No. 12332
HILARY WILLIAMS
Nevada Bar No. 14645
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Tel: (702) 550-4400
Fax: (844) 670-6009
*Attorneys for Plaintiff*

22

## CERTIFICATE OF SERVICE

The undersigned, an employee of Dickinson Wright PLLC, hereby certifies that on the 16th day of February 2018, a copy of the Complaint and Application for Temporary Restraining Order and Motion for Preliminary Injunction on an Order Shortening Time were emailed to the following in their individual capacities and on behalf of PATCH 4 ALL, INC. at the following email addresses:

| | |
|---|---|
| Jennifer Laird:<br>jllaird@gmail.com and<br>jennifer@jllmarketing.com<br>*Defendant* | Kymbirley Brake:<br>kymbirleyerin@gmail.com and<br>keboc13@gmail.com<br>*Defendant* |
| Dennis Shepherd:<br>spinshep@aol.com<br>*Defendant* | Jayme Frassett:<br>jayme@patch4all.com<br>*Defendant* |
| Pearl Coetzee:<br>pearl@patch4all.com<br>Defendant | Nicole Santos:<br>nicole@patch4all.com<br>Defendant |

An Employee of Dickinson Wright PLLC

1

# EXHIBIT 1

## DECLARATION OF MARK NIELSEN IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

I, Mark Nielsen, being first duly sworn, declares as follows:

1.      I am over the age of 18 and am competent to testify to the matters set forth herein.

2.      I am submitting this declaration in support of PatchMD, LLC's Application For Temporary Restraining Order And Motion For Preliminary Injunction (the "Application").

3.      I am the interim CEO of PatchMD and I assumed this role when Dennis Shepherd ("Shepherd") was removed from his position as the CEO of PatchMD on or about December 12, 2017.

4.      Immediately after being removed as CEO, Shepherd began interfering with PatchMD's business relationships and profits.  For example, Shepherd disabled PatchMD's American Express cards that were used to pay for PatchMD's daily operational needs and advertising after directly telling me that the card under Kymbirley Brake's name would stay active.  Shepherd also tried changing the GoDaddy account registration information for PatchMD's website domain names that were used to project PatchMD's image to the public to reference himself and persons and/or entities over which he had control.

5.      As PatchMD was investigating these acts, it discovered that Shepherd had also incorporated a new company, Patch 4 All, Inc. ("Patch 4 All"), to conduct business in direct competition with PatchMD and registered a website under that name the day after his removal as CEO. I am informed and believe and thereupon allege that Shepherd funded Patch 4 All with the unauthorized salary and bonuses he took from PatchMD.

6.      Upon further investigation into Patch 4 All, PatchMD discovered that similar to PatchMD, Patch 4 All sells patches that provide vitamins and supplements by utilizing the skin for the delivery system. *Compare* Patch 4 All Website, a true and correct copy of which is attached hereto as Exhibit 1-A *with* PatchMD's Websites, true and correct copies of which are attached hereto as Exhibits 1-B, 1-C, and 1-D.

7.      According to Patch 4 All's Website, Patch 4 All sells patches under brand name Ohana, as well as other brand names. *See* Exhibit 1-A.

1    8.     I am informed and believe and thereupon allege that the Ohana patches sold by Patch 4 All

2    use PatchMD's confidential and proprietary patch formulas and patch design, as well as PatchMD's

3    suppliers.

4    9.     To make matters worse, it appears that Defendants advertise the Ohana patches using

5    PatchMD's confidential and proprietary customer lists, contact information, and/or online subscriber

6    lists. *See* January 28, 2018 Email from Confidential Supplier to me, a true and correct copy of which

7    is attached hereto as Exhibit 1-E.

8    10.    While researching Shepherd's new entity Patch 4 All, PatchMD also learned that Shepherd

9    was contacting and soliciting PatchMD executives, employees, and consultants in an effort to get

10    them to work with him at Patch 4 All and interfere with PatchMD's ability to conduct business.

11    11.    Defendants improperly and successfully solicited at least the following five PatchMD

12    executives, employees, and/or consultants to assist with the creation of Patch 4 All and to then leave

13    PatchMD: PatchMD's Vice President Jennifer Laird ("Laird"), PatchMD's CFO Kymbirley Brake,

14    PatchMD's Creative Director Jayme Frassett, PatchMD's Wholesale Accounts Manager Pearl

15    Coetzee, and PatchMD's marketing and social media resource Nicole Santos. *See* PatchMD's

16    Response to Termination Notices, a true and correct copy of which is attached hereto as Exhibit 1-

17    F.

18    12.    Not only did Laird, Brake, Frassett, Coetzee, and Santos agree to work for Patch 4 All, but

19    they also conspired with Shepherd to access and misappropriate PatchMD's confidential information

20    and trade secrets including, but not limited to: (a) patch formulations; (b) patch design; (c) client

21    lists (past, present, and prospective); (d) business relationships and internal pricing strategies with

22    patch creators, marketing partners, manufacturers, wholesalers, affiliates, and retailers; (e) search

23    engine optimization and search engine marketing including keywords used and targeted in relation

24    to its online platforms; (f) online advertising strategies, bids, commission rates, and the display

25    networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for

26    PatchMD prior to January 16, 2018 (the "Trade Secrets").

27    13.    As part of its internal investigation after the sudden departure of five PatchMD employees to

28    Patch 4 All, PatchMD discovered that in furtherance of Defendants' scheme to develop Patch 4 All,

Laird forwarded numerous emails regarding PatchMD's Trade Secrets, including, *inter alia*, PatchMD's confidential and proprietary purchase order information, customer lists, and marketing strategy directly from her PatchMD email address to her already established Patch 4 All email address. *See* January 10, 2018 Email from Jennifer Laird at PatchMD to Jennifer Laird at Patch 4 All, a true and correct copy of which is attached hereto as Exhibit 1-G; January 9, 2018 Email from Jennifer Laird at PatchMD to Jennifer Laird at Patch 4 All, a true and correct copy of which is attached hereto as Exhibit 1-H; January 9, 2018 Email from Jennifer Laird at PatchMD to Jennifer Laird at Patch 4 All, a true and correct copy of which is attached hereto as Exhibit 1-I; February 8, 2018 Email from me to Jennifer Laird, a true and correct copy of which is attached hereto as Exhibit 1-J. In addition, Laird also misappropriated and withheld approximately twelve customer and prospective customer mailing lists vital to PatchMD's business operations. Although Laird has returned the unsubscribe data for one of the twelve lists, and thereby admitted taking PatchMD's Trade Secrets, she has failed and refused to return the remaining unsubscribe lists, thereby precluding PatchMD from communicating with thousands of customers and prospects.

14.     In addition, I recently learned that Jennifer Laird has been in contact with PatchMD's two offshore Customer Service Representatives to hire them away from working for PatchMD after a year of PatchMD investing in these individuals to train them on our business and details of how to respond to phone and online queries on our unique products. One of these two individuals just recently gave notice of their resignation.

15.     In addition to learning that Shepherd and Laird transferred the Trade Secrets to Patch 4 All, PatchMD also discovered that Laird attempted to delete files containing confidential and proprietary information from PatchMD's filing system prior to leaving PatchMD in an effort to give a competitive advantage to Patch 4 All.

16.     I have also discovered that Patch 4 All converted PatchMD's physical check printing account without notice to, or authorization from, PatchMD. Indeed, PatchMD's check provider informed me that the account now had a contact email of kymbirleyerin@hotmail.com, a California telephone number, and a physical address of Patch4All, Inc. at 17284 Newhope St., Suite 217, Fountain Valley, CA 92708.

17.    Further, Brake has misappropriated and withheld PatchMD's accounting records as contained in its QuickBook files, which records are vital to PatchMD's business operations and still retains the Master Administrator credentials on PatchMD's Online QuickBooks account, which only she can transfer over to us.

18.    Moreover, via communications with PatchMD's customers, marketing partners, formulators, and suppliers, I have learned that Defendants are misrepresenting to PatchMD's customers, marketing partners, formulators and suppliers that PatchMD is fully aware and accepting of Patch 4 All's actions and, further, that Patch 4 All owns certain proprietary formulas for PatchMD's patches. PatchMD is redacting the names of its confidential customers, formulators, and suppliers in order to preserve the confidential nature of the information.  However, PatchMD is willing to provide the Court with specific identities in camera or during a closed hearing if necessary.

19.    It appears that through such misrepresentations, Patch 4 All has formed or is attempting to form business relationships with PatchMD's confidential formulators, marketing partners, suppliers, and online marketing groups. Again, PatchMD will reveal the specific identities of such formulators, suppliers, and online marketing groups to the Court in camera or during a closed hearing if necessary.

20.    Defendants' actions have caused and will continue to cause irreparable harm to PatchMD.

21.    Without injunctive relief, Defendants will continue to be irreparably harmed by Defendants' misappropriation and conversion of PatchMD's Trade Secrets in the operation of Patch 4 All, including Defendants' continual contact of individuals and entities on PatchMD's confidential and proprietary customer, prospect, marketing partner, manufacturer, and supplier lists, and continue to garner and benefit from PatchMD's goodwill and reputation through the use of PatchMD's Trade Secrets to the detriment of PatchMD. Such conduct must be enjoined and all of PatchMD's Trade Secrets in Defendants' possession, custody, and control must be returned or destroyed.

    I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct based upon my knowledge, information, and belief.

    Executed this 15th day of February, 2018

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARK NIELSEN, INTERIM CEO
PATCHMD, LLC

# About



## Patch4All Brands

Choose to live a healthy and fulfilling life using our Topical Patches for personal use or in your spa, clinic, retail store, or business.

EXHIBIT 1-A



## Ohana Topical Patches

**Your Health & Wellness Matter:**
In order to live a higher quality life, maintaining optimal wellness is key. Ohana Topical Patches are designed and formulated for everyone to promote positive nutritional needs.

## Private Label With Patch4All, Inc.

To achieve optimal wellness, one must apply it towards every possible endeavor! You can apply a topical patch wellness approach within your business, clinic, or career. Patch4All offers not only private label of current formulas, but the ability to work with professional formulators to achieve your own personal patch line made specifically for you.

[ Email Address ]    [ SIGN UP ]

# Contact Us

## Send Patch4All A Message

## Enhance Wellness with topical patches!

Feel free to contact us with any questions, inquiries, or to schedule an appointment

Name

# EXHIBIT 1-B









# EXHIBIT 1-C

Be Vitamin Patches and S...   x

← C  Secure  https... www.patchrevolution.com

Home  About  Shop  Faq  Contact Us  My Account

# Join the Patch Revolution

Meet the revolutionary new topical patches that are changing the way we take vitamins forever!

Shop Now ▶

Patch Benefits

# Most Popular Patches

PatchMD is 100% latex, fructose, gluten (and sugar!) free! Slowly released nutrients are delivered right into your bloodstream, as opposed to being absorbed through the digestive tract. For those who can't swallow pills, don't like them or have GI issues, this product is nothing short of amazing. We're proud to be officially the #1 Vitamin Patch company in America. We're also proud to be American made and distributed... and we always will be!



Home   About   Shop   Faq   Contact Us   My Account



# About Us

## The latest in topical patch technology

**PatchMD's innovative solution to optimizing your daily nutrient intake. 100% natural, convenient and easy to use. Lactose, gluten and sugar-free.**

Shop Now

# About PatchMD

EXHIBIT 1-D







**All Products** (Total Items: 42)

BEST SELLERS

BEST SELLING PACKAGES
- Bariatric Basics 1
- Bariatric Basics 2
- Daily Nutrition Made For Women / Day
- Daily Nutrition Made For Women / Night
- MultiVitamin Plus Patch
- Summer Pack

ALL TIME
- B12 Energy Plus Patch
- Garcinia Cambogia Plus Topical Patch
- Iron Plus Topical Patch
- Vitamin D3 Topical Patch

BY PATCHES
BY CATEGORIES
BY VITAMINS
BY INGREDIENTS

**All Day Pack**

★★★★★ (8 Reviews)
YOUR PRICE $59.85
ADD TO CART

**Anti-Aging Topical Patch**

★★★★★ (13 Reviews)
YOUR PRICE $19.95
ADD TO CART

**B12 Energy Plus Patch**

★★★★★ (23 Reviews)
YOUR PRICE $19.95
ADD TO CART

EXHIBIT 1-E

## Mark

| | |
|---|---|
| **From:** | ███████████████████ |
| **Sent:** | Sunday, January 28, 2018 9:50 AM |
| **To:** | Earl Hailey; markn@patchmd.com |
| **Cc:** | mark nielsen |
| **Subject:** | Fwd: Ohana Topical Patches posted new services |

Good morning,

Jen has been in contact with me as she apparently has been working with Dennis on a new company.

I wanted to bring the products to your attention as there is little doubt where the formulations came from.

This looks like gross theft of intellectual property and violation of any kind of non-compete.

What are your thoughts?

██████

Get Outlook for iOS

---

From: Alignable <noreply@email.alignable.com>
Sent: Saturday, January 27, 2018 10:41 PM
Subject: Ohana Topical Patches posted new services
To: ███████████████████



Hi Barry,

Ohana Topical Patches has shared their featured services with you and are asking if you'll help them spread the word.
"Like" their services below to share it with your network.



**Ohana Bari Support Topical Patches**
Ohana Topical Patches

Formulated with a comprehensive blend of vitamins and min...







**Ohana Focus Pro Topical Patches**
Ohana Topical Patches

Formulated with a comprehensive blend of natural ingredie...





**P.S. Have you added your promotions and products and services yet?**

We'll automatically let your network know about what you post. Add your own referral opportunities

You are receiving information from your network you should know about
If you no longer wish to receive these type of emails. you can**unsubscribe**

Alignable205 Portland Street
Boston MA 02114

EXHIBIT 1-F

**PatchMD™**

Jennifer Laird
29 Gauguin Cir
Aliso Viejo, CA 92656

January 25, 2018

Dear Jennifer,

We received your email of your immediate resignation without any advance notice from your consulting relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Saturday, January 13, 2018.

Because you are no longer contracted by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control. Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property (collectively "Company Property") that (i) was paid for or developed during your consulting relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your consulting. PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD. Sharing Company Property could actually expose the recipient to liability. Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm. The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former consultant.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

**PatchMD™**

Jayme Frassett
15555 Huntington Village Ln, #270
Huntington Beach, CA 92647

January 25, 2018

Dear Jayme,

We received your email of your immediate resignation without any advance notice from your employment relationship with PatchMD; LLC ("PatchMD") over the holiday weekend on Saturday, January 13, 2018.

Because you are no longer employed by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control. Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property (collectively "Company Property") that (i) was paid for or developed during your employment relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your employment. PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD. Sharing Company Property could actually expose the recipient to liability. Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm. The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former employee.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

PatchMD 6045 Harrison Drive, Suite 5, Las Vegas, NV 89120 - Phone: 702-749-7888

**PatchMD™**

Kymbirley Brake
5112 Cumberland Ave.
Westminster, CA 92683

January 25, 2018

Dear Kymbirley,

We received your email of your immediate resignation without any advance notice from your employment relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Saturday, January 13, 2018.

Because you are no longer employed by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control. Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property (collectively "Company Property") that (i) was paid for or developed during your employment relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your employment. PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD. Sharing Company Property could actually expose the recipient to liability. Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm. The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former employee.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

PatchMD 6045 Harrison Drive, Suite 5, Las Vegas, NV 89120 - Phone: 702-749-7888

**PatchMD™**

Pearl Coetzee
4450 South Hualapai Way #1202
Las Vegas, NV 89147

January 25, 2018

Dear Pearl,

We received your email of your immediate resignation without any advance notice from your consulting relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Monday, January 15, 2018.

Because you are no longer contracted by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control. Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property (collectively "Company Property") that (i) was paid for or developed during your consulting relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your consulting. PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD. Sharing Company Property could actually expose the recipient to liability. Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm. The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former consultant.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

**PatchMD**™

Nicole Santos
850 S. 400W Unit #205
Salt Lake City, UT 84101

January 25, 2018

Dear Nicole,

We received your email of your immediate resignation without any advance notice from your consulting relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Saturday, January 13, 2018.

Because you are no longer contracted by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control. Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property (collectively "Company Property") that (i) was paid for or developed during your consulting relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your consulting. PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD. Sharing Company Property could actually expose the recipient to liability. Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm. The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former consultant.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

# EXHIBIT 1-G

in:sent

## Mail

Move to Inbox    More

COMPOSE

### Vitamins Plus P.O. #251548170    Inbox    x

Inbox (1,540)

Starred

Sent Mail

Drafts

Spam (7)

Trash

A_BBB

AA_Ideavessel

AA_NewProduct in..

CBD

AA_Patch_Storefr...

AA_PatchMD_Staff

Google Calendar

**Manager #251**
to me



📄 PO#251548170.pdf

**Jennifer Laird** <jennifer@patchmd.com>
to jennifer

— Fo
From: Man
Date: Wed
Subject: VI
To: jennifer

from:    Jennifer Laird <jennifer@patchmd.com>

to:      jennifer@patch4all.com

date:    Wed, Jan 10, 2018 at 9:58 AM

subject: Fwd: Vitamins Plus P.O. #251548170

mailed-by: patchmd.com

--
Jennifer L Laird
Vice President
c. 702.660.9481
Skype: jllaird

**PatchMD.com**
*"Using Today's Science For Tomorrow's Health"*

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged Material. A
than the intended recipient is prohibited without the express permission of the sender. If you received this communication in error, please contact the se

# EXHIBIT 1-H



# EXHIBIT 1-I



In:sent

## Mail

Move to Inbox          More

COMPOSE

Inbox (1,540)

Starred

Sent Mail

Drafts

Spam (7)

Trash

A_BBB

AA_Idsavessel

AA_NewProduct In...

   CBD

AA_Patch_Storahr...

AA_PatchMD_Staff

Google Calendar

**Name of new Item**  Inbox  x

to PATCH, earl, me

Hi, Don

Could you share me the name of new patch product (for ADHD)?
I create a new brochure of patch MD, so you have the image, please kindly send it me as well.

Thank you !

**Jennifer Laird** <jennifer@patchmd.com>
to jennifer

Jennifer L
Vice Presi
c. 702.809.
Skype: jlai

PatchMD.c
*Using Too

| | |
|---|---|
| from: | Jennifer Laird <jennifer@patchmd.com> |
| to: | jennifer@patch4all.com |
| date: | Tue, Jan 9, 2018 at 2:02 PM |
| subject: | Fwd: Name of new Item |
| mailed-by: | patchmd.com |

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged Material /
than the intended recipient is prohibited without the express permission of the sender. If you received this communication in error, please contact the se

Click here to Reply or Forward

EXHIBIT 1-J

**From:** <markn@patchmd.com>
**Date:** February 8, 2018 at 5:27:05 PM PST
**To:** <jennifer@jllmarketing.com>
**Subject: MailChimp**

Jennifer,

We still have not received the 12 or so email lists from our MailChimp account that you have withheld from us.  We cannot use the copies from 3dCart as you know since we need the actual files from MailChimp that have the unsubscribes in order to stay in legal compliance.  These are all customer lists and prospect lists from shows and from the various PatchMD websites that belong to PatchMD and are our proprietary information.  The PatchMD business is daily being damaged while you withhold the return of this information.  Thank you for your prompt attention to this matter.

*Mark Nielsen*
Interim CEO
PatchMD, LLC

mark@patchmd.com

# EXHIBIT 2

## DECLARATION OF EARL HAILEY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER, MOTION FOR PRELIMINARY INJUNCTION

I, Earl Hailey, being first duly sworn, declares as follows:

1.      I am over the age of 18 and am competent to testify to the matters set forth herein.

2.      I am submitting this declaration in support of PatchMD, LLC's Application for Temporary Restraining Order and Motion for Preliminary Injunction (the "Application").

3.      On or about September 2009, Dennis Shepherd ("Shepherd") and I formed PatchMD to sell vitamins and supplements in a topical patch that utilizes the skin for the delivery system.

4.      PatchMD is in the business of developing and selling topical patches that utilizes the skin for the delivery system of vitamins and supplements. The patches contain innovative technology including in their formulations and three layer design.

5.      As part of its ongoing business, PatchMD distributes patches to retailers and wholesalers and sells patches directly to customers through its online platforms, PatchMD.com, PatchRevolution.com, and PatchPlan.com.

6.      At all relevant times, I have been the President of PatchMD.

7.      Shepherd was and now claims to be the largest interest holder in PatchMD. Shepherd also served as the CEO of PatchMD from its inception until he was removed from that position on December 12, 2017.

8.      PatchMD possesses confidential information and trade secrets including, but not limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, manufacturers, wholesalers, affiliates, and retailers; (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms; (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018 (the "Trade Secrets"). PatchMD's Trade Secrets give PatchMD an economic edge in a competitive market by not being generally known to or readily ascertainable by others.

9.      PatchMD has kept these Trade Secrets confidential by, among other things, drafting, preparing, and distributing nondisclosure agreements, communicating nondisclosure expectations, and otherwise instituting policies to protect the Trade Secrets.

10.     The confidential and proprietary nature of the Trade Secrets has been repeatedly acknowledged by PatchMD executives and employees, including Shepherd, who understand the importance of protecting the Trade Secrets from outside businesses and third-parties and enforcing PatchMD's confidentiality policies. *See, e.g.*, August 18, 2016 Email from Dennis Shepherd to Jane Baxter, a true and correct copy of which is attached hereto as Exhibit 2-A.

11.     In 2017, while still performing the role of PatchMD's CEO, I learned that Shepherd was drawing a salary in excess of $600,000. This equated to a salary of $50,000 per month, which was well in excess of the monthly salary Shepherd misrepresented he was taking. Shepherd also paid himself an unauthorized bonus of $75,000 between November 25 and December 8, 2017.

12.     I then confronted Shepherd about the need to distribute profits to the other members of PatchMD, but Shepherd repeatedly told me that he did not care about the other members and would only agree to make distributions to them upon a sale of PatchMD.

13.     Upon learning of Shepherd's improper actions, including, but not limited to, Shepherd's unauthorized drawing of an annual salary in excess of $600,000 and refusal to adhere to his fiduciary duties to the other members of PatchMD, I, along with the remaining interest holders in PatchMD, elected to remove Shepherd as CEO.

14.     As part of Shepherd's removal as CEO of PatchMD, Shepherd and PatchMD came to an understanding whereby Shepherd agreed to relinquish all of his right, title and interest in PatchMD and agreed not to compete with PatchMD for a period of three years.

15.     Following Shepherd's removal as CEO, I learned that Shepherd, along with PatchMD's Vice President Jennifer Laird and PatchMD's CFO Kymbirley Brake, acted to the detriment of PatchMD by, *inter alia*, forming a competing company, Patch 4 All, Inc., and misappropriating PatchMD's Trade Secrets to further the interests of Patch 4 All to the detriment of PatchMD.

16.     Defendants' actions have and, if not enjoined, will continue to cause irreparable harm to PatchMD.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct based upon my knowledge, information, and belief.

Executed this 15th day of February, 2018

EARL HAILEY, PRESIDENT
PATCHMD, LLC

# EXHIBIT 2-A

**From:** spinshep@aol.com [mailto:spinshep@aol.com]
**Sent:** Thursday, August 18, 2016 9:56 AM
**To:** jbaxter7287@gmail.com; lntlearl@aol.com; mark@textpower.com
**Subject:** Re: PatchMD™ - Request for Information

Jane, the requested information (including respective quantities ,source  information
,potencies ,and  extract ratios ,where  applicable) are trade secrets and will not be supplied, after any
order is made a CofA will accompany said orders of each product and not before. We at PatchMD have
always had this policy.

Thanks you

Dennis Shepherd
CEO PatchMD
714-318-4705
dennis@patchmd.com
spinshep@aol.com

-----Original Message-----
From: J Baxter <jbaxter7287@gmail.com>
To: dennis shepherd <spinshep@aol.com>
Cc: jane <jane@solutionstoday.ca>
Sent: Thu, Aug 18, 2016 6:53 am
Subject: Fwd: PatchMD™ - Request for Information

Hello Dennis,

Please see the attached document and provide required information and inquiries to Tania at
Nutrasource.

Thanks,

Jane

Jane Baxter
905-435-8813

---------- Forwarded message ----------
From: **Tania John** <TJohn@nutrasource.ca>
Date: Wed, Aug 17, 2016 at 4:47 PM
Subject: PatchMD™ - Request for Information
To: "jbaxter7287@gmail.com" <jbaxter7287@gmail.com>
Cc: Jennifer Ellis <JEllis@nutrasource.ca>, Frederick Choy <FChoy@nutrasource.ca>

Dear Jane,

As Jennifer prefaced, I will be acting as PM on this project and am excited to get started. In order to begin
the Regulatory Risk Analysis phase however, I will require responses to the queries outlined in the
attached 'Request for Information' document, where applicable. Thank you.

We look forward to working with you,

**Tania John, B.Sc., M.Sc.**
**Associate Director, Regulatory Affairs**

**Nutrasource | 120 Research Lane, Suite 203, Guelph, ON, Canada N1G 0B4**
T: 226-706-2535 | C: 519-803-8529 | F: 888-531-3466 | E: tjohn@nutrasource.ca | W: www.nutrasource.ca



**Connect with us at:** Natural Products Expo East (Baltimore, Sept 22-24 – booth #5733) | SupplySide West (Las Vegas, Oct 4-8 – booth #T129)



This communication is for the use of the intended recipient and contains information that may be privileged, confidential or otherwise protected under applicable law. If you are not the intended recipient, you are hereby formally notified that any use, copying or distribution of this email, in whole or in part, is strictly prohibited. Please notify the sender by return email and delete this email from your system. Unless explicitly and conspicuously designated as a "Signed Offer", this email does not constitute a contract offer, a contract amendment, or an acceptance of a contract offer. This email does not constitute the consent of someone to release information for a direct marketing purpose or for the sale of details to a third party.



1  **MTRO**
   **DICKINSON WRIGHT PLLC**
2  MICHAEL N. FEDER
   Nevada Bar No. 7332
3  Email: mfeder@dickinson-wright.com
   GABRIEL A. BLUMBERG
4  Nevada Bar No. 12332
   Email: gblumberg@dickinson-wright.com
5  HILARY WILLIAMS
   Nevada Bar No. 14645
6  Email: hwilliams@dickinson-wright.com
   8363 West Sunset Road, Suite 200
7  Las Vegas, Nevada 89113-2210
   Tel: (702) 550-4400
8  Fax: (844) 670-6009
   *Attorneys for Plaintiff*

9

10                     **DISTRICT COURT**

11                **CLARK COUNTY, NEVADA**

12

13  PATCHMD, LLC, a Nevada Limited          CASE NO. A-18-769567-B
    Liability Company,                      DEPT. 25

14                 Plaintiff,

15  v.                                      **APPLICATION FOR TEMPORARY**
                                            **RESTRAINING ORDER AND MOTION**
16  DENNIS SHEPHERD, an individual; JENNIFER  **FOR PRELIMINARY INJUNCTION ON**
    LAIRD, an individual; KYMBIRLEY BRAKE,  **AN ORDER SHORTENING TIME**
17  an individual; JAYME FRASSETT, an individual;   DEPARTMENT XXV
    NICOLE SANTOS, an individual; PEARL            NOTICE OF HEARING
18  COETZEE, an individual;  and PATCH 4 ALL,  DATE 3/27/17 TIME 10:30 A.M.
    INC., a California corporation;
19                 Defendants.             APPROVED BY *T. Walsh*

20        Plaintiff, PatchMD, LLC, ("PatchMD" or "Plaintiff"), by and through counsel, the law firm

21  of Dickinson Wright PLLC, hereby respectfully requests that the Court:

22        1. Enter a Temporary Restraining Order, and thereafter a Preliminary Injunction:

23              a.     Enjoining  Defendants  from  utilizing  PatchMD's  confidential  and

24  proprietary: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective);

25  (d) business relationships and internal pricing strategies with patch creators, manufacturers,

26  wholesalers, affiliates, and retailers;  (e) search engine optimization and search engine marketing

27  including keywords used and targeted in relation to its online platforms;  (f) online advertising

28  strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and

                                            1                          FEB 1 6 2018

(g) marketing and advertising materials created for PatchMD prior to January 16, 2018 (the "Trade Secrets");

        b.      Requiring Defendants to return all of PatchMD's Trade Secrets and any documents or communications relating to the Trade Secrets;

        c.      Requiring Defendants to destroy all copies of PatchMD's Trade Secrets and any documents or communications relating to the Trade Secrets;

        d.      Enjoining Defendants from soliciting or otherwise contacting or interfering with any of Plaintiff's past, current, or future employees; and

        e.      Enjoining Defendants from soliciting or otherwise contacting or interfering with any of Plaintiff's vendors, marketing partners, suppliers, manufacturers, formula providers/creators, consultants and customers.

    2.      Enter an order shortening time to set the hearing on PatchMD's Application for Temporary Restraining Order and Motion for Preliminary Injunction, and maintain the temporary restraining order in effect until the date of said hearing.

    This Application and Motion is based upon the following Memorandum of Points and Authorities; the pleadings and papers already on file herein, including PatchMD's Complaint (the "Complaint"); the Declaration of Michael N. Feder, Esq. set forth below; the Declaration of Mark Nielsen attached hereto as Exhibit 1 and the exhibits attached thereto; the Declaration of Earl Hailey attached hereto as Exhibit 2 and the exhibits attached thereto; and any argument of counsel that may be permitted at the hearing in this matter.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

2

**DECLARATION OF MICHAEL N. FEDER, ESQ. IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER, MOTION FOR PRELIMINARY INJUNCTION, AND EX PARTE APPLICATION FOR ORDER SHORTENING TIME**

Michael N. Feder, Esq., being first duly sworn, declares as follows:

1.      I am an attorney licensed to practice law in the State of Nevada and I am a member of the law firm of Dickinson Wright PLLC, counsel for PatchMD. I have personal knowledge of all facts and circumstances set forth in this declaration unless otherwise stated upon information and belief.

2.      This declaration is submitted in support of the Application for Temporary Restraining Order and Motion for Preliminary Injunction on an Order Shortening Time ("Application").

3.      The Court should grant PatchMD's Application on an emergency basis because Plaintiff's will suffer immediate and irreparable loss before the parties to this action or their attorneys can be heard in opposition.

4.      As set forth more fully in PatchMD's Complaint, the Defendants in this matter have misappropriated Trade Secrets and confidential information belonging to PatchMD, including, but not limited to, PatchMD's confidential and proprietary regarding: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, marketing partners, manufacturers, wholesalers, affiliates, and retailers;  (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms;  (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018  (the "Trade Secrets"). Defendants must be immediately enjoined from using PatchMD's Trade Secrets because Defendants are actively attempting to replace PatchMD in PatchMD's business relationships by utilizing PatchMD's Trade Secrets. Moreover, Defendants are falsely representing to patch creators, suppliers, and customers that PatchMD is aware of and approves of Defendants' use of PatchMD's Trade Secrets.

3

5.      Based upon the information set forth herein, Defendants are presently interfering with and causing immediate damage to Plaintiff's business by contacting and/or withholding Plaintiff's clients, employees, vendors, prospects, marketing partners, suppliers, manufacturers, patch providers/creators and the like in an attempt to build their own competing business and undermine Plaintiff's business. Based upon the information set forth herein, Defendants have interfered with and affected PatchMD's relationship with one of PatchMD's suppliers as recently as January 30, 2018.

6.      Defendants' actions are impairing Plaintiff's goodwill and reputation as well as jeopardizing its immediate and existing client relationships and relationships with its vendors, employees, clients, marketing partners, suppliers, manufacturers, patch providers/creators and the like.

7.      If Plaintiff loses its relationships with vendors, employees, clients, marketing partners, suppliers, manufacturers, patch providers/creators and the like due to loss of reputation and goodwill caused by Defendants' fraudulent conduct including if Plaintiff's Trade Secrets lose their status as trade secrets due to Defendants unauthorized disclosure and/or use of Plaintiff's Trade Secrets, Plaintiff's business will be immediately, detrimentally and irreparably damaged.

8.      Therefore, unless the Application is granted, Plaintiff will be irreparably harmed.

9.      Given the immediate and irreparable harm being caused by Defendants, it is imperative that this matter be heard on shortened time.

10.     A copy of the Complaint and this Application have been or will be emailed to Dennis Shepherd, Jennifer Laird, and Kymbirley Brake at their last known email addresses in their individual capacities and on behalf of Patch 4 All and to Jayme Frassett, Nicole Santos, and Pearl Coetzee at what I believe to be their Patch 4 All email addresses on February 16, 2018.

EXECUTED this 16th day of February, 2018.

MICHAEL N. FEDER, ESQ.

4

**ORDER SHORTENING TIME**

Good Cause Appearing Therefore,

IT IS HEREBY ORDERED that the time for hearing PatchMD's Application for Temporary Restraining Order and Motion for Preliminary Injunction is shortened to be heard on the 27th day of FEBRUARY, 2018, at 10:30 a.m/p.m., or as soon thereafter as the parties may be heard. THIS APPLICATION AND OST MUST BE PERSONALLY SERVED BY CLOSE OF BUSINESS TUESDAY, FEBRUARY 21, 2018. OPPOSITION MUST BE FILED AND SERVED BY 12 NOON ON MONDAY, FEBRUARY 26, 2018. NO REPLY WILL BE PERMITTED OR CONSIDERED. (KED)

_____
DISTRICT COURT JUDGE

Respectfully Submitted By:

DICKINSON WRIGHT PLLC

_____
MICHAEL N. FEDER, NV Bar No.7332
GABRIEL A. BLUMBERG, NV Bar No. 12332
HILARY WILLIAMS, NV Bar No. 14645
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Tel: (702) 550-4400
*Attorneys for Plaintiff*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Defendants must be restrained from exploiting and profiting from PatchMD's Trade Secrets while harming PatchMD who rightfully owns the Trade Secrets and should be the one reaping the benefits associated with them. PatchMD has developed and guarded the Trade Secrets since its inception in 2009 and has used the Trade Secrets to garner goodwill, develop numerous business relationships, create a valuable client base, and employ a complex manufacturing and distribution system for its proprietary patches. Despite serving as PatchMD's CEO during this same period, Shepherd repeatedly breached his fiduciary duty to PatchMD by drawing an unreasonably large salary, issuing himself unauthorized bonuses, and acting in a manner inconsistent with PatchMD's best interests.

1    Upon learning of Shepherd's historical misdeeds, the remaining members of PatchMD

2  elected to remove Shepherd as CEO and began negotiating the terms of Shepherd's separation

3  from PatchMD membership.   After agreeing to the terms of the separation, and in complete

4  dereliction of his fiduciary obligations and contrary to his representations to PatchMD, Shepherd

5  began intentionally interfering with PatchMD's business operations by forming a competing

6  entity, Patch 4 All, freezing PatchMD's credit cards, and developing plans and executing schemes

7  to misappropriate PatchMD's Trade Secrets and steal the majority of PatchMD's remaining

8  employees for the benefit of Patch 4 All.

9    To make matters worse, Shepherd conspired with PatchMD's Vice President Jennifer Laird

10  ("Laird"), PatchMD's CFO Kymbirley Brake ("Brake"), PatchMD's Creative Director Jayme

11  Frassett ("Frassett"), PatchMD's Wholesale Accounts Manager Pearl Coetzee ("Coetzee"), and

12  PatchMD's marketing and social media resource Nicole Santos ("Santos") to misappropriate

13  PatchMD's Trade Secrets while they still worked for PatchMD.   In furtherance of their conspiracy,

14  Laird inappropriately downloaded PatchMD's customer and online subscriber lists (the "Customer

15  Lists"), purchase order information, prospective distributors, and potential marketing plans and

16  sent them to Patch 4 All.   In addition, Laird deleted numerous PatchMD electronic files and

17  conspired with Shepherd to solicit additional PatchMD employees to begin working at Patch 4 All,

18  as well as contacting PatchMD suppliers or business partners on behalf of Shepherd and Patch4All

19  while still being paid by PatchMD.   Furthermore, Brake misappropriated and withheld PatchMD's

20  accounting records as contained in its QuickBook files (the "Accounting Records") and has failed

21  to release the Master Administrator credentials for the QuickBooks Online account belonging to

22  PatchMD.

23    Defendants have used PatchMD's Trade Secrets and confidential information to, *inter alia*:

24  (1) operate Patch 4 All; (2) usurp PatchMD's online subscriber list; (3) to obtain a contractual

25  business relationship with PatchMD's manufacturer and packaging supplier; and (4) interfere with

26  PatchMD's current customers and patch formulator. All the while, Defendants have been

27  misrepresenting to customers, formulators, suppliers and packagers that Shepherd's removal from

28

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

1  PatchMD was mutually agreed upon by Shepherd and PatchMD and that PatchMD's proprietary

2  information belonged to Patch 4 All.

3       Unfortunately, Defendants' nefarious conduct will continue to irreparably harm PatchMD

4  absent immediate injunctive relief.  Therefore, this Court should immediately enter injunctive

5  relief to preclude Defendants from continuing to profit from PatchMD's Trade Secrets while at the

6  same time irreparably tarnishing PatchMD's goodwill, business reputation, and client

7  relationships.  Accordingly, PatchMD requests that this Court grant Plaintiff temporary,

8  preliminary, and permanent injunctive relief: (i) enjoining Defendants from utilizing PatchMD's

9  Trade Secrets; (ii) mandating that Defendants return and/or destroy PatchMD's Trade Secrets and

10  confidential and proprietary information in their possession, custody, or control including, but not

11  limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective);

12  (d) business relationships and internal pricing strategies with patch creators, marketing partners,

13  manufacturers, wholesalers, affiliates, and retailers;  (e) search engine optimization and search

14  engine marketing including keywords used and targeted in relation to its online platforms;  (f)

15  online advertising strategies, bids, commission rates, and the display networks, affiliate sites and

16  agencies used; and (g) marketing and advertising materials created for PatchMD prior to January

17  16, 2018 (the "Trade Secrets"); and  (iii) mandating that Defendants return access to the original

18  Customer Lists and Accounting Records to PatchMD.

19                    **II. STATEMENT OF RELEVANT FACTS**

20       In or about September 2009, Shepherd and Earl Hailey ("Hailey") formed PatchMD to sell

21  vitamins and supplements in a topical patch that utilizes the skin for the delivery system.  Hailey

22  Decl. ¶ 3.  PatchMD is in the business of developing and selling topical patches that utilizes the

23  skin for the delivery system of vitamins and supplements. The patches contain innovative

24  technology including in their formulations and three layer design. Hailey Decl. ¶ 4.  As part of its

25  ongoing business, PatchMD distributes patches to retailers and wholesalers and sells patches

26  directly to customers through its online platforms, PatchMD.com, PatchRevolution.com, and

27  PatchPlan.com. Hailey Decl. ¶ 5.

28  ///

DICKINSON WRIGHTPLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

PatchMD possesses Trade Secrets and has kept these Trade Secrets confidential by, among other things, drafting, preparing, and distributing nondisclosure agreements with employees and third parties, communicating nondisclosure expectations, and instituting policies to protect the Trade Secrets. *Id.* at ¶¶ 8-9.

The confidential and proprietary nature of the Trade Secrets has been repeatedly acknowledged by PatchMD executives and employees, including Shepherd, who understand the importance of protecting the Trade Secrets from outside businesses and third-parties and enforcing PatchMD's confidentiality policies. *Id.* at ¶ 10; Ex. 2-A.

**Shepherd Begins Taking Actions Contrary to PatchMD's Interests and Is Removed as CEO**

In 2017, while still performing the role of PatchMD's CEO, Shepherd, without the knowledge of, or authority from, the other members of PatchMD, unilaterally increased his monthly salary to $50,000 per month and paid himself an unauthorized bonus of $75,000. Hailey Decl. ¶ 11. This salary was well in excess of the monthly salary that Shepherd and Brake had misrepresented Shepherd was drawing. *Id.* Upon learning of Shepherd's exorbitant salary and unauthorized bonus, Hailey confronted Shepherd about the need to distribute profits to the other members of PatchMD, but Shepherd repeatedly told Hailey that he did not care about the other members and would only agree to make distributions to them upon a sale of PatchMD. *Id.* at ¶ 12.

Upon learning of Shepherd's improper actions, including, but not limited to, drawing an annual salary in excess of $600,000, paying himself an unapproved bonus, and improperly using corporate funds, the remaining interest holders in PatchMD elected to remove Shepherd as CEO. *Id.* at ¶ 13. As part of Shepherd's separation from PatchMD, Shepherd and PatchMD came to an understanding whereby Shepherd agreed to relinquish all of his right, title and interest in PatchMD and agreed not to compete with PatchMD for a period of three years. *Id.* at ¶ 14.

**Shepherd Forms a Competing Entity, Patch 4 All, Using PatchMD's Trade Secrets and Employees**

Soon after being removed as CEO and agreeing not to compete with PatchMD, or possibly even earlier, Shepherd, along with Laird, began interfering with PatchMD's business relationships and economic expectancy. *See generally* Nielsen Decl. Shepherd disabled PatchMD's American

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

8

1   Express cards that were used to pay for PatchMD's advertisements and daily operational needs
2   and also tried changing the GoDaddy account registration information for PatchMD's website
3   domain names to reference himself and persons and/or entities over which he had control to the
4   detriment of PatchMD.  Nielsen Decl. ¶ 4.

5        Shepherd also began contacting and soliciting PatchMD executives, employees, and
6   consultants in an effort to get them to work with him at Patch 4 All, an entity he had formed to
7   directly compete with PatchMD and funded using the excessive salary he had been taking from
8   PatchMD. *Id.* at ¶¶ 5, 10.  Shepherd improperly and successfully solicited at least the following
9   five PatchMD executives, employees, and/or consultants to assist with the creation of Patch 4 All
10  and to then leave PatchMD: PatchMD's Vice President Laird, PatchMD's CFO Brake, PatchMD's
11  Creative Director Frassett, PatchMD's Wholesale Accounts Manager Coetzee, and PatchMD's
12  marketing and social media resource Santos. *See id.* at ¶ 11.

13       Not only did these PatchMD employees agree to work for Patch 4 All, but they also
14  conspired with Shepherd to access and transfer PatchMD's Trade Secrets to Patch 4 All. *Id.* at ¶
15  12.  In furtherance of their scheme to develop Patch 4 All, Laird forwarded numerous emails
16  regarding PatchMD's Trade Secrets, including, *inter alia*, PatchMD's confidential and proprietary
17  purchase order information, customer lists, and marketing strategy directly from her PatchMD
18  email address to her already established Patch 4 All email address. *Id.* at ¶ 13; Ex. 1-G, 1-H, 1-I,
19  1-J.  In addition, Laird also misappropriated and withheld approximately twelve customer and
20  prospective customer mailing lists vital to PatchMD's business operations. *Id.*  Although Laird
21  has returned the unsubscribe data for one of the twelve lists, and thereby admitted taking
22  PatchMD's Trade Secrets, she has failed and refused to return the remaining unsubscribe lists,
23  thereby precluding PatchMD from communicating with thousands of customers and prospects. *Id.*

24       Furthermore, Laird also attempted to delete Trade Secrets files from PatchMD's filing
25  system prior to leaving PatchMD in an effort to give a competitive advantage to Patch 4 All. *Id.*
26  at ¶ 15.  Laird also solicited PatchMD's offshore customer service representatives to work for
27  Patch 4 All after PatchMD had spent a year investing in training these individuals in PatchMD's
28  business model. *Id.* at ¶ 14.

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

9

Further, Brake has misappropriated and withheld PatchMD's accounting records as contained in its QuickBook files, which records are vital to PatchMD's business operations. *Id.* at ¶ 17. Brake still retains the Master Administrator credentials on PatchMD's Online QuickBooks account, which only she can transfer to PatchMD. *Id.*

Patch 4 All also converted PatchMD's physical check printing account without notice to, or authorization from, PatchMD. *Id.* at ¶ 16. Indeed, PatchMD's check provider informed PatchMD that the account now had a contact email of kymbirleyerin@hotmail.com, a California telephone number, and a physical address of Patch4All, Inc. at 17284 Newhope St., Suite 217, Fountain Valley, CA 92708. *Id.*

### Patch 4 All Mirrors PatchMD's Business Model and Uses PatchMD's Trade Secrets to Compete Directly with PatchMD and Reduce PatchMD's Business

Similar to PatchMD, Patch 4 All sells patches that provide vitamins and supplements by utilizing the skin for the delivery system. Nielsen Decl. ¶ 6; Exs. 1-A-1-D. According to Patch 4 All's Website, Patch 4 All sells patches under brand name Ohana, as well as other brand names. Nielsen Decl. ¶ 7; Ex. 1-A. The Ohana patch sold by Patch 4 All uses PatchMD's confidential and proprietary patch formulas and patch design, and Patch 4 All markets the Ohana patch using, *inter alia*, PatchMD's confidential and proprietary customer lists. Nielsen Decl. ¶¶ 8-9.

Defendants are also using patch formulas and patch designs exclusively licensed to PatchMD in Patch 4 All's regular course of business, and Shepherd is misrepresenting to third parties that PatchMD is fully aware of his actions and, further, that he still owns certain proprietary formulas for PatchMD's patches. *See id.* at ¶ 18.

Moreover, PatchMD is informed and believes and thereupon alleges that Defendants are using these misrepresentations to form or attempt to form business relationships with PatchMD's confidential formulators, suppliers, wholesalers, and online market groups. *Id.* at ¶ 19.

Defendants' actions have caused and will continue to cause irreparable harm to PatchMD. *Id.* at ¶ 20. Without injunctive relief, Defendants will continue to be irreparably harmed by Defendants' misappropriation and conversion of PatchMD's Trade Secrets in the operation of Patch 4 All, including Defendants' continual contact of individuals and entities on PatchMD's

10

confidential and proprietary customer, prospect, marketing partner, manufacturer, and supplier lists, and continue to garner and benefit from PatchMD's goodwill and reputation through the use of PatchMD's Trade Secrets to the detriment of PatchMD. *Id.* at ¶ 21.

### III. LEGAL ARGUMENT

**A.    The Court Should Enter a Temporary Restraining Order**

     **1.    Legal Standard for Granting a Temporary Restraining Order**

NRCP 65(b) provides:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.
>
> …
>
> In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if the party does not do so, the court shall dissolve the temporary restraining order.

NRCP 65(b).

Equity will "restrain tortious acts where it is essential to preserve a business or property interest." *Guion v. Terra Marketing of Nevada, Inc.*, 90 Nev. 237, 240, 523 P.2d 847 (1974). The issuance of a temporary restraining order is proper in this case.

     **2.    Plaintiff Will Suffer Irreparable Harm If a Temporary Restraining Order Is Not Issued[1]**

PatchMD undoubtedly will suffer irreparable harm without an adequate remedy at law if Defendants are allowed to continue utilizing PatchMD's Trade Secrets and confidential information. Irreparable harm is presumed where a party misappropriates a trade secret. *Excellence*

---

[1] The Feder Declaration above satisfies the second element requiring attorney certification of the notice given or the reasons why notice need not be given.

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

1  *Cmty. Mgmt. v. Gilmore*, 351 P.3d 720, 724 (Nev. 2015).  Moreover, the Nevada Supreme Court

2  has found that irreparable harm occurs when a party unreasonably interferes with a business when,

3  for example, the business's former executive solicits the business's customers, induces employees

4  to leave the business, and discloses confidential information and trade secrets such as contracts,

5  pricing structures, customer lists, and product designs after purchasing a competing business.

6  *Finkel v. Cashman Professional, Inc.*, 270 P.3d 1259, 1263 (Nev. 2012).

7        Here, PatchMD easily satisfies the requirements to obtain injunctive relief. First, it is

8  apparent that Defendants have misappropriated PatchMD's Trade Secrets. *See, e.g.*, Nielsen Decl.

9  ¶¶ 8-17. Defendants are using PatchMD's proprietary patch formulas and designs, PatchMD's

10  confidential manufacturing and supply sources, PatchMD's Accounting Records, and PatchMD's

11  Customer Lists advertise and profit from its Ohana patches. Nielsen Decl. ¶¶ 8-9, 13, 17. Second,

12  similar to the situation in *Finkel*, where the Nevada Supreme Court found that injunctive relief was

13  appropriate, Defendants have solicited PatchMD's customers, induced at least five of PatchMD's

14  employees to leave PatchMD's employment to work for Patch 4 All, and improperly converted

15  marketing plans for Patch 4 All's benefit. *See* Nielsen Decl. ¶¶ 9-18; Ex. 1-F, 1-J. Indeed, Laird

16  was even sending PatchMD's Trade Secrets to Patch 4 All while she remained employed by

17  PatchMD to further the interests of Patch 4 All to the detriment of PatchMD. Ex. 1-G, 1-H, 1-I.

18        Additionally, Defendants have contacted PatchMD's customers, formulators and suppliers

19  to spread falsehoods concerning Shepherd's removal from PatchMD. Nielsen Decl. ¶ 18. Namely,

20  Defendants have falsely "informed" customers, formulators, and suppliers that PatchMD is fully

21  aware of Defendants' actions and that Defendants own certain proprietary formulas for PatchMD's

22  patches. *Id.*

23        Furthermore, Shepherd directly harmed PatchMD's reputation and goodwill by interfering

24  with its ability to advertise and provide services to its customers when he disabled PatchMD's

25  American Express cards, which were used to pay for PatchMD's advertisements and daily

26  operational needs. Nielsen Decl. ¶ 4. Moreover, Shepherd attempted to usurp PatchMD's website

27  domain names, which are used to project PatchMD's image to the public, by changing the domain

28

DICKINSON WRIGHT PLLC

8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

1    names' contact information to reference himself and persons and/or entities over which he had

2    control. *Id.*

3         Based on these recurring bad acts by Defendants and Defendants' likelihood of continuing

4    to irreparably tarnish PatchMD's goodwill, reputation, and business relationships absent injunctive

5    relief, the Court should enter a temporary restraining order enjoining Defendants from utilizing

6    PatchMD's Trade Secrets and mandating that Defendants return and/or destroy any information

7    relating to PatchMD's Trade Secrets.

8         **3.    The Bond Should be Minimal**

9         NRCP 65(c) requires movants to post a bond before issuance of the temporary restraining

10   order. If this Court requires the posting of a bond, Plaintiff requests that such bond be minimal.

11   The temporary restraining order is only attempting to prevent Defendants from further

12   misappropriating PatchMD's Trade Secrets obtained by Defendants' wrongful conduct and

13   Shepherd and Laird's breach of fiduciary duties. Instead, the temporary restraining order seeks to

14   enjoin Defendants from inappropriately and unfairly enjoying the fruits of their prohibited conduct.

15   As a consequence, Defendants will not suffer any compensable damages from the entry of the

16   temporary restraining order and Plaintiff therefore requests that the bond be set at a *de minimus*

17   amount, not to exceed $500.00.

18   **B.    After Entering a Temporary Restraining Order, the Court Should Issue an Order to
         Show Cause to Defendants and Set a Hearing on Plaintiff's Motion for Preliminary**
19   **Injunction**

20        The issuance of a temporary restraining order will briefly reduce the threat of immediate

21   and irreparable harm to Plaintiff, but a preliminary injunction is necessary to ensure Defendants

22   do not resume irreparably harming Plaintiff prior to the Court adjudicating the merits of this matter.

23        **1.    A Preliminary Injunction Is Necessary and Appropriate**

24        The issuance of mandatory and restrictive injunctions is a well-settled remedy in Nevada.

25   *See City of Reno v. Metley*, 79 Nev. 49, 61, 378 P.2d 256, 262 (1963); *see also Memory Gardens*

26   *of Las Vegas, Inc. v. Pet Ponderosa Memorial Gardens, Inc.*, 88 Nev. 1, 492 P.2d 1123 (1972);

27   *Harmon v. Tanner Motor Tours of Nevada, Ltd.*, 79 Nev. 4, 377 P.2d 622 (1963). In fact, NRS

28   33.010 provides:

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

13

An injunction may be granted in the following cases:

    1.   When it shall appear by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

    2.   When it shall appear by the complaint or affidavit that the commission or continuance of some act, during the litigation, would produce great or irreparable injury to the plaintiff.

    3.   When it shall appear, during the litigation, that the defendant is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual.

NRS 33.010.

For a preliminary injunction to issue, "the moving party must show that there is a likelihood of success on the merits and that the nonmoving party's conduct, should it continue, would cause irreparable harm for which there is no adequate remedy at law." *Department of Conservation and Natural Resources, Div. of Water Resources v. Foley*, 109 P.3d 760, 762 (2005). Equity will "restrain tortious acts where it is essential to preserve a business or property interest." *Guion v. Terra Marketing of Nevada, Inc.*, 90 Nev. 237, 240, 523 P.2d 847 (1974).

The Court should consider the following four factors when determining whether it should enter preliminary injunctive relief:

1.      The threat of immediate, irreparable harm;

2.      The likelihood that the party seeking a preliminary injunction will be successful on the merits of the underlying action;

3.      Whether the balance of interests weighs in favor of the party seeking the preliminary injunction; and

4.      Whether issuance of the preliminary injunction is in the public's interest.

*Clark County School District v. Buchanan*, 112 Nev. 1146, 924 P.2d 716 (1996); *see also Number One Rent-A-Car v. Ramada Inns*, 94 Nev. 779, 780, 587 P.2d 1329, 1330 (1978) (holding that a "preliminary injunction to preserve the status quo is normally available upon a showing that the party seeking it enjoys a reasonable probability of success on the merits and that the defendant's conduct, if allowed to continue, will result in irreparable harm for which compensatory damages is an inadequate remedy").

14

Here, it is apparent that Plaintiff satisfies these elements and is entitled to a preliminary injunction preventing Defendants from further colluding to erode Plaintiff's legitimate proprietary interests in its Trade Secrets, goodwill, and business relationships.

### 2. Plaintiff Will Suffer Irreparable Harm if Defendants are Allowed to Continue Utilizing Plaintiff's Trade Secrets

As set forth more fully above in Section III(A)(2), *supra*[2], Plaintiff will suffer irreparable harm including, but not limited to, loss of reputation and goodwill, if Defendants are allowed to continue utilizing PatchMD's Trade Secrets and confidential information including, but not limited to, utilizing PatchMD's patch formulas, client and online subscriber lists, and information about PatchMD's business relationships to solicit and convert such relationships and profit from PatchMD's reputation and goodwill. As previously explained, Defendants are actively eroding the foundation of goodwill, reputation and relationships PatchMD relies upon to conduct its business, and Defendants are using the Trade Secrets and confidential information Defendant's wrongfully obtained from PatchMD to do it. Damages will not repair or replace the goodwill, reputation or relationships lost due to Defendants' malfeasance.

### 3. Plaintiff Is Likely to Succeed on the Merits of Its Claims

Plaintiff has asserted claims for, *inter alia*, violation of the Nevada Uniform Trade Secrets Act, conversion, intentional interference with contractual relationships, intentional interference with prospective economic advantage, and breach of fiduciary duty in its Complaint and is likely to prevail on each claim.[3]

#### a. Defendants Have Violated the Nevada Trade Secrets Act

Plaintiff is likely to prevail on its claim for violation of the Nevada Trade Secrets Act. NRS 600A.040 permits injunctive relief for actual or threatened misappropriation of trade secrets. NRS

---

[2] The analysis of irreparable harm for a temporary restraining order is practically identical to the analysis required for a preliminary injunction. *First 100, LLC v. Omni Financial, LLC*, 2016 WL 3511252 (D. Nev. June 27, 2016).

[3] To show a reasonable probability of success on the merits, movants are not required to prove that they will ultimately prevail in the lawsuit. *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success").

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

1    600A.040. Whether information qualifies as a trade secret may be determined by analyzing factors

2    such as the extent the information is known outside of the business, the difficulty in acquiring the

3    information, whether the information was confidential, the extent and manner the employer

4    guarded the information, the former employee's knowledge of customer data and whether the

5    information is known to the employer's competitors. *Finkel v. Cashman Professional, Inc.*, 270

6    P.3d 1259, 1264 (Nev. 2012). Trade secrets may include contracts, processes, prices, costs,

7    discounts, future plans, business affairs, technical matters, customer lists, product designs,

8    copyrights and other business-related confidential information. *Id.*

9          Misappropriation is defined in NRS 600A.030(2) as:

10                 (a) Acquisition of the trade secret of another by a person by
11                 improper means
                   ...
12                 (c) Disclosure or use of a trade secret of another without express or
                   implied consent by a person who:
13                        (1) Used improper means to acquire knowledge of the
                               trade secret; [or]
14                        (2) At the time of disclosure or use, knew or had reason to
                               know that his or her knowledge of the trade secret was:
15                               (I) Derived from or through a person who had used
                                   improper means to acquire it;
16                               (II) Acquired under circumstances giving rise to a duty
17                                   to maintain its secrecy or limit its use; or
                                 (III) Derived from or through a person who owed a
18                                   duty to the person seeking relief to maintain its
19                                   secrecy or limit its use.

20    NRS 600A.030(2).

21          Furthermore, "improper means" includes a willful breach or willful inducement of a breach

22    of a duty to maintain secrecy or a breach of duty imposed by common law. NRS 600A.030(1)(d),

23    (e).

24          Here, Defendants misappropriated PatchMD Trade Secrets including, but not limited to:

25    •   patch formulations

26    •   pricing information

27    •   client lists and contact information

28    •   manufacturer information

16

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

- wholesaler/distributor information
- retailer information
- patch formula providers/creators
- search engine optimization strategies including keywords used and targeted in relation to PatchMD's online platforms
- online advertising strategies, bids, commission rates, display networks, affiliate sites, and agencies used
- marketing and advertising materials created for PatchMD prior to January 16, 2018

These categories of information qualify as trade secrets because, applying the factors in *Finkel*: (1) the information is difficult to obtain (2) the information is confidential and secret, (3) Plaintiff identified its intent to keep the information confidential to employees and third parties and such intent was confirmed by Shepherd and Laird, and (4) Shepherd and Laird acquired intimate knowledge of PatchMD's Trade Secrets in their roles as owners and/or executives of PatchMD and such information was unknown to PatchMD's competitors until Shepherd and Laird improperly disclosed such information to their competing entity Patch 4 All.  Hailey Decl. ¶¶ 8-10; 2-A.

Indeed, Shepherd, Laird, and Brake, as executives of PatchMD, had a fiduciary obligation to maintain the secrecy of PatchMD's confidential information. *See In re Amerco Derivative Litig.*, 252 P.3d 681, 701 (Nev. 2011). As explained further in Section III(B)(3)(c), they willfully breached their duty to maintain secrecy, their duty of loyalty and their duty to avoid self-dealing. In fact, despite acknowledging that PatchMD's Trade Secrets were intended to be confidential and should be treated as Trade Secrets, Defendants conspired to disclose PatchMD's Trade Secrets. *See* Hailey Decl. ¶ 10. Laird was even so brazen as to send PatchMD Trade Secrets from her PatchMD email account to her Patch 4 All email account. Ex. 1-G, 1-H, 1-I.

After wrongfully misappropriating PatchMD's Trade Secrets, Defendants compounded their wrongful conduct by using the Trade Secrets to operate Patch 4 All, including, but not limited to, contacting PatchMD's clients using PatchMD's Customer Lists, using PatchMD's suppliers, using PatchMD's Accounting Records, converting PatchMD's checking account, and utilizing

17

PatchMD's proprietary patch formulas. *See* Nielsen Decl. ¶¶ 8-9, 13-18. Indeed, it would have been impossible for Defendants to have formed and began operating Patch 4 All in such a short time span absent their wrongful misappropriation of the Trade Secrets.

Based on the foregoing, it is clear that Plaintiff has a strong likelihood of prevailing on its claim for violation of Nevada's Trade Secrets Act.

### b. Defendants Converted Plaintiffs' Trade Secrets and Confidential Information

Plaintiff is likely to prevail on its claim for conversion. Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *MC Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 542-43 (Nev. 2008). Intangible personal property may be subject to conversion and thus exercising a right that belongs to another may give rise to such a claim. *Id.* at 538-39. Conversion does not require wrongful intent and is not excused by care, good faith or lack of knowledge. *Id.* at 542-43.

Here, Defendants wrongfully converted PatchMD's Trade Secrets and confidential information by utilizing them as described in Section III(B)(3)(a). Namely, Defendants used PatchMD's Trade Secrets, confidential information, and other proprietary information to harm PatchMD and interfere with PatchMD's current and prospective clients and contractual relationships, which rightfully belong to PatchMD by virtue of its superior technology, reputation, hard work and years of developing goodwill. Therefore, Plaintiff is likely to prevail on its claim for conversion against Defendants.

### c. Defendants Intentionally Interfered with PatchMD's Business Relationships

Plaintiff has a meritorious claim against Defendants for intentional interference with contractual relations. Under Nevada law, such a claim exists where: (1) there exists a valid contract between plaintiff and third party; (2) Defendant knew of the contract; (3) Defendant committed intentional acts intended or designed to disrupt the contractual relationship; (4) there was an actual

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

18

1  disruption of the contract; and (5) Plaintiff sustained damages as a result. *Hilton Hotels Corp. v.*

2  *Butch Lewis Productions, Inc.*, 862 P.2d 1207, 1210 (Nev. 1993).

3     Here, PatchMD has contractual or implied contractual business relationships with its

4  customers, vendors, employees, marketing partners, manufacturers, wholesalers, and suppliers.

5  *See* Nielsen Decl. ¶¶ 17-18. Defendants undoubtedly knew of these contracts by virtue of Laird's

6  position as Vice President of PatchMD and Shepherd's position as CEO as PatchMD. Hailey Decl.

7  ¶¶ 7, 10.  Using this knowledge, Defendants then intentionally attempted to interfere with such

8  contracts. Nielsen Decl. ¶¶ 17-18. Similarly, Defendants have also attempted to interfere with

9  PatchMD's contracts with its clients and packagers by misrepresenting the facts regarding

10  Shepherd's removal as CEO. *See id.* These misrepresentations tainted PatchMD's goodwill and

11  reputation and disrupted PatchMD's contracts with its formulators, clients and suppliers. Nielsen

12  Decl. ¶¶ 19-20. As a result, PatchMD is likely to succeed on its claim for intentional interference

13  with contractual relationships.

### d. Defendants Intentionally Interfered with PatchMD's Prospective Economic Advantage

16     PatchMD is likely to prevail on its claim against Defendants for intentional interference

17  with prospective economic advantage.  The elements for intentional interference with prospective

18  economic advantage are: (1) a prospective contractual relationship exists between the plaintiff and

19  a third party; (2) defendant had knowledge of the prospective relationship; (3) defendant had the

20  intent to harm the plaintiff by preventing the relationship; (4) defendant had no privilege or

21  justification; and (5) actual harm to the plaintiff as a result of the defendant's conduct.  *In re*

22  *Americo Derivative Litig.*, 252 P.3d 681 (Nev. 2011).

23     Here, in addition to the actual and implied contracts referenced in Section III(B)(3)(d),

24  Defendants gained knowledge of a list of PatchMD's prospective contractual relationships when

25  they improperly downloaded and used PatchMD's Customer Lists.  Nielsen Decl. ¶ 13.

26  Defendants then used this information to advertise their competing Ohana patches to PatchMD's

27  prospective client base in an effort to harm PatchMD and deprive it of prospective business.

28

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

19

1   Nielsen Decl. ¶¶ 9, 19.  Defendants had no privilege or justification for their interference and their

2   conduct has precluded PatchMD from obtaining certain business and has irreparably harmed

3   PatchMD's reputation and goodwill.  *See* Nielsen Decl. ¶¶ 19-20.

4            **e.  Shepherd, Brake, and Laird Breached Their Fiduciary Duties to PatchMD**

5        Plaintiff also has a meritorious claim for breach of fiduciary duty. Defendant Shepherd, as

6   CEO of PatchMD, Defendant Brake, as CFO of PatchMD, and Defendant Laird, as Vice President

7   of PatchMD, owed fiduciary duties to PatchMD. *See In re Amerco Derivative Litig.*, 252 P.3d 681,

8   701 (Nev. 2011) (corporate officers owe duty of loyalty to corporation); *White Cap Indus., Inc. v.*

9   *Ruppert*, 67 P.3d 318, 319 (Nev. 2003) (finding that a district sales manager has a fiduciary duty

10  to his employer); *see also Tousa Homes Inc. v. Phillips*, 363 F.Supp.2d 1274, 1280 (D. Nev. 2005)

11  ("...an employee generally owes his employer a duty of loyalty respecting prospective business

12  opportunity...")

13       Here, Shepherd, Brake, and Laird routinely and repeatedly breach their fiduciary duties by,

14  *inter alia*:

15       •   conspiring with each other to begin a competing business and harm PatchMD;

16       •   misappropriating PatchMD's Trade Secrets while still employed with PatchMD for

17          use at Patch 4 All;

18       •   soliciting PatchMD's employees to join Patch 4 All while still employed at

19          PatchMD;

20       •   attempting to delete PatchMD's Trade Secrets from PatchMD's database; and

21       •   neglecting duties and obligations to PatchMD to focus on forming Patch 4 All

22  *See generally* Nielsen Decl.; Section III(B)(3)(a) (misappropriating trade secrets). Moreover,

23  Shepherd paid himself an exorbitant salary in excess of $600,000 and took a bonus of $75,000 in

24  late 2017 without authorization to serve his own self-interest while neglecting to provide

25  distributions to other PatchMD interest holders and to the detriment of PatchMD. Hailey Decl. ¶

26  11.

27       Based upon the foregoing, Plaintiff is likely to prevail upon its claim for breach of fiduciary

28  duty against Shepherd and Laird.

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

### 4.     The Balance of Hardships Weighs in Favor of Plaintiff

The balance of hardships weighs in favor of Plaintiff because while Defendants continue to utilize PatchMD's Trade Secrets, PatchMD suffers: (1) loss of goodwill; (2) loss of reputation; (3) the threat of the continued disclosure of PatchMD's Trade Secrets; and (4) loss of current and prospective contractual relationships with vendors and clients that it has worked for many years to build. Conversely, the Defendants would only be temporarily delayed from improperly soliciting such vendors and clients and temporarily precluded from disclosing PatchMD's Trade Secrets to wrongfully produce and sell patches using PatchMD formulas. Moreover, instead of honoring their fiduciary duties to PatchMD, Shepherd and Laird used their positions of trust as CEO and Vice President of PatchMD to amass confidential information and reap profits for themselves that rightfully belong to PatchMD. Defendants should not be allowed to profit from their wrongful acts to PatchMD's detriment and thus the balance of equities weighs heavily in favor PatchMD and granting injunctive relief.

### 5.     The Public Interest Strongly Favors Granting an Injunction

If Defendants are allowed to carry out their scheme, it would undermine the trust required to conduct business and operate businesses across the State. Businesses will become inefficient as executives become suspicious of each other and refuse to share information concerning common endeavors if the threat of executives absconding with company trade secrets without recourse is allowed to continue. Therefore, the public interest weighs in favor of granting the injunction.

### 6.     The Bond for an Injunction Should Be Nominal

Similar to the temporary restraining order, the Court should only require a nominal bond for the preliminary injunction because the injunction is only attempting to prevent Defendants from further misappropriating and converting PatchMD's Trade Secrets obtained by Defendants' wrongful conduct and Shepherd and Laird's breach of their fiduciary duties. Therefore, Defendants will suffer no compensable damages because of the preliminary injunction and Plaintiff requests that the bond be set at a *de minimus* amount, in an amount not to exceed $500.

///

///

21

## IV. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court enter a temporary restraining order, grant a preliminary injunction in its favor, and require only a minimal bond.

Dated this 16th day of February, 2018.

DICKINSON WRIGHT PLLC

MICHAEL N. FEDER
Nevada Bar No. 7332
GABRIEL A. BLUMBERG
Nevada Bar No. 12332
HILARY WILLIAMS
Nevada Bar No. 14645
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210
Tel: (702) 550-4400
Fax: (844) 670-6009
*Attorneys for Plaintiff*

22

## CERTIFICATE OF SERVICE

The undersigned, an employee of Dickinson Wright PLLC, hereby certifies that on the 16th day of February 2018, a copy of the Complaint and Application for Temporary Restraining Order and Motion for Preliminary Injunction on an Order Shortening Time were emailed to the following in their individual capacities and on behalf of PATCH 4 ALL, INC. at the following email addresses:

| | |
|---|---|
| Jennifer Laird:<br>jllaird@gmail.com and<br>jennifer@jllmarketing.com<br>*Defendant* | Kymbirley Brake:<br>kymbirleyerin@gmail.com and<br>keboc13@gmail.com<br>*Defendant* |
| Dennis Shepherd:<br>spinshep@aol.com<br>*Defendant* | Jayme Frassett:<br>jayme@patch4all.com<br>*Defendant* |
| Pearl Coetzee:<br>pearl@patch4all.com<br>Defendant | Nicole Santos:<br>nicole@patch4all.com<br>Defendant |

An Employee of Dickinson Wright PLLC

DICKINSON WRIGHT PLLC
8363 West Sunset Road, Suite 200
Las Vegas, Nevada 89113-2210

1

# EXHIBIT 1

**DECLARATION OF MARK NIELSEN IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

I, Mark Nielsen, being first duly sworn, declares as follows:

1.     I am over the age of 18 and am competent to testify to the matters set forth herein.

2.     I am submitting this declaration in support of PatchMD, LLC's Application For Temporary Restraining Order And Motion For Preliminary Injunction (the "Application").

3.     I am the interim CEO of PatchMD and I assumed this role when Dennis Shepherd ("Shepherd") was removed from his position as the CEO of PatchMD on or about December 12, 2017.

4.     Immediately after being removed as CEO, Shepherd began interfering with PatchMD's business relationships and profits.  For example, Shepherd disabled PatchMD's American Express cards that were used to pay for PatchMD's daily operational needs and advertising after directly telling me that the card under Kymbirley Brake's name would stay active.  Shepherd also tried changing the GoDaddy account registration information for PatchMD's website domain names that were used to project PatchMD's image to the public to reference himself and persons and/or entities over which he had control.

5.     As PatchMD was investigating these acts, it discovered that Shepherd had also incorporated a new company, Patch 4 All, Inc. ("Patch 4 All"), to conduct business in direct competition with PatchMD and registered a website under that name the day after his removal as CEO. I am informed and believe and thereupon allege that Shepherd funded Patch 4 All with the unauthorized salary and bonuses he took from PatchMD.

6.     Upon further investigation into Patch 4 All, PatchMD discovered that similar to PatchMD, Patch 4 All sells patches that provide vitamins and supplements by utilizing the skin for the delivery system. *Compare* Patch 4 All Website, a true and correct copy of which is attached hereto as Exhibit 1-A *with* PatchMD's Websites, true and correct copies of which are attached hereto as Exhibits 1-B, 1-C, and 1-D.

7.     According to Patch 4 All's Website, Patch 4 All sells patches under brand name Ohana, as well as other brand names. *See* Exhibit 1-A.

8.     I am informed and believe and thereupon allege that the Ohana patches sold by Patch 4 All use PatchMD's confidential and proprietary patch formulas and patch design, as well as PatchMD's suppliers.

9.     To make matters worse, it appears that Defendants advertise the Ohana patches using PatchMD's confidential and proprietary customer lists, contact information, and/or online subscriber lists. *See* January 28, 2018 Email from Confidential Supplier to me, a true and correct copy of which is attached hereto as Exhibit 1-E.

10.     While researching Shepherd's new entity Patch 4 All, PatchMD also learned that Shepherd was contacting and soliciting PatchMD executives, employees, and consultants in an effort to get them to work with him at Patch 4 All and interfere with PatchMD's ability to conduct business.

11.     Defendants improperly and successfully solicited at least the following five PatchMD executives, employees, and/or consultants to assist with the creation of Patch 4 All and to then leave PatchMD: PatchMD's Vice President Jennifer Laird ("Laird"), PatchMD's CFO Kymbirley Brake, PatchMD's Creative Director Jayme Frassett, PatchMD's Wholesale Accounts Manager Pearl Coetzee, and PatchMD's marketing and social media resource Nicole Santos. *See* PatchMD's Response to Termination Notices, a true and correct copy of which is attached hereto as Exhibit 1-F.

12.     Not only did Laird, Brake, Frassett, Coetzee, and Santos agree to work for Patch 4 All, but they also conspired with Shepherd to access and misappropriate PatchMD's confidential information and trade secrets including, but not limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, marketing partners, manufacturers, wholesalers, affiliates, and retailers;  (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms;  (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018 (the "Trade Secrets").

13.     As part of its internal investigation after the sudden departure of five PatchMD employees to Patch 4 All, PatchMD discovered that in furtherance of Defendants' scheme to develop Patch 4 All,

1    Laird forwarded numerous emails regarding PatchMD's Trade Secrets, including, *inter alia*,
2    PatchMD's confidential and proprietary purchase order information, customer lists, and marketing
3    strategy directly from her PatchMD email address to her already established Patch 4 All email
4    address. *See* January 10, 2018 Email from Jennifer Laird at PatchMD to Jennifer Laird at Patch 4
5    All, a true and correct copy of which is attached hereto as Exhibit 1-G; January 9, 2018 Email from
6    Jennifer Laird at PatchMD to Jennifer Laird at Patch 4 All, a true and correct copy of which is
7    attached hereto as Exhibit 1-H; January 9, 2018 Email from Jennifer Laird at PatchMD to Jennifer
8    Laird at Patch 4 All, a true and correct copy of which is attached hereto as Exhibit 1-I; February 8,
9    2018 Email from me to Jennifer Laird, a true and correct copy of which is attached hereto as Exhibit
10   1-J. In addition, Laird also misappropriated and withheld approximately twelve customer and
11   prospective customer mailing lists vital to PatchMD's business operations. Although Laird has
12   returned the unsubscribe data for one of the twelve lists, and thereby admitted taking PatchMD's
13   Trade Secrets, she has failed and refused to return the remaining unsubscribe lists, thereby
14   precluding PatchMD from communicating with thousands of customers and prospects.

15   14.    In addition, I recently learned that Jennifer Laird has been in contact with PatchMD's two
16   offshore Customer Service Representatives to hire them away from working for PatchMD after a
17   year of PatchMD investing in these individuals to train them on our business and details of how to
18   respond to phone and online queries on our unique products. One of these two individuals just
19   recently gave notice of their resignation.

20   15.    In addition to learning that Shepherd and Laird transferred the Trade Secrets to Patch 4 All,
21   PatchMD also discovered that Laird attempted to delete files containing confidential and proprietary
22   information from PatchMD's filing system prior to leaving PatchMD in an effort to give a
23   competitive advantage to Patch 4 All.

24   16.    I have also discovered that Patch 4 All converted PatchMD's physical check printing account
25   without notice to, or authorization from, PatchMD. Indeed, PatchMD's check provider informed
26   me that the account now had a contact email of kymbirleyerin@hotmail.com, a California telephone
27   number, and a physical address of Patch4All, Inc. at 17284 Newhope St., Suite 217, Fountain Valley,
28   CA 92708.

17.    Further, Brake has misappropriated and withheld PatchMD's accounting records as contained in its QuickBook files, which records are vital to PatchMD's business operations and still retains the Master Administrator credentials on PatchMD's Online QuickBooks account, which only she can transfer over to us.

18.    Moreover, via communications with PatchMD's customers, marketing partners, formulators, and suppliers, I have learned that Defendants are misrepresenting to PatchMD's customers, marketing partners, formulators and suppliers that PatchMD is fully aware and accepting of Patch 4 All's actions and, further, that Patch 4 All owns certain proprietary formulas for PatchMD's patches. PatchMD is redacting the names of its confidential customers, formulators, and suppliers in order to preserve the confidential nature of the information.  However, PatchMD is willing to provide the Court with specific identities in camera or during a closed hearing if necessary.

19.    It appears that through such misrepresentations, Patch 4 All has formed or is attempting to form business relationships with PatchMD's confidential formulators, marketing partners, suppliers, and online marketing groups. Again, PatchMD will reveal the specific identities of such formulators, suppliers, and online marketing groups to the Court in camera or during a closed hearing if necessary.

20.    Defendants' actions have caused and will continue to cause irreparable harm to PatchMD.

21.    Without injunctive relief, Defendants will continue to be irreparably harmed by Defendants' misappropriation and conversion of PatchMD's Trade Secrets in the operation of Patch 4 All, including Defendants' continual contact of individuals and entities on PatchMD's confidential and proprietary customer, prospect, marketing partner, manufacturer, and supplier lists, and continue to garner and benefit from PatchMD's goodwill and reputation through the use of PatchMD's Trade Secrets to the detriment of PatchMD. Such conduct must be enjoined and all of PatchMD's Trade Secrets in Defendants' possession, custody, and control must be returned or destroyed.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct based upon my knowledge, information, and belief.

Executed this 15TH day of February, 2018

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARK NIELSEN, INTERIM CEO
PATCHMD, LLC

# EXHIBIT 1-A

# About



## Patch4All Brands

Choose to live a healthy and fulfilling life using our Topical Patches for personal use or in your spa, clinic, retail store, or business.

https://patch4all.com



**TOPICAL PATCHES**

## Ohana Topical Patches

**Your Health & Wellness Matter.**

In order to live a higher quality life, maintaining optimal wellness is key. Ohana Topical Patches are designed and formulated for everyone to promote positive nutritional needs.

## Private Label With Patch4All, Inc.

To achieve optimal wellness, one must apply it towards every possible endeavor. You can apply a topical patch wellness approach within your business, clinic, or career. Patch4All offers not only private label of current formulas, but the ability to work with professional formulators to achieve your own personal patch line made specifically for you.

Email Address

SIGN UP

## Contact Us

### Send Patch4All A Message

Name

### Enhance Wellness with topical patches!

Feel free to contact us with any questions, inquiries, or to schedule an appointment.

# EXHIBIT 1-B



ALL NEW PATCH PLANS STARTING FROM $59.85

PATCH PLAN    PRODUCTS    ABOUT    SHOP NOW    HOW TO USE    TECHNOLOGY    REVIEWS    NEWS    CONTACT US

Search        MY ACCOUNT

# PatchMD
## Topical Vitamin Patches

PatchMD provides vitamins and supplements in a topical patch that utilizes the skin for the delivery system and avoids the digestive system

✔ Easy Topical Absorption with Increased Bioavailability
✔ 8 Hour Steady Application
✔ No Fillers or Calories
✔ Perfect for Travel
✔ Money Back Guarantee!

**SHOP OUR PATCHES**

As seen in    Forbes     TODAY    WORKING MOTHER    Buzz Feed    cafe mom    SHAPE







# EXHIBIT 1-C



Home   About   Shop   Faq   Contact Us   My Account

# Join the Patch Revolution

Meet the revolutionary new topical patches that are changing the way we take vitamins forever!



## Most Popular Patches

Patch Benefits

PatchMD is 100% latex, lactose, gluten (and sugar) free! Slowly released nutrients are delivered right into your bloodstream, as opposed to being absorbed through the digestive tract. For those who can't swallow pills, don't like them or have GI issues, this product is nothing short of amazing. We're proud to be offic ials, the #1 Vitamin Patch company in America. We're also proud to be American made and distributed... and we live by what we sell!



# About Us

## The latest in topical patch technology

PatchMD's innovative solution to optimizing your daily nutrient intake. 100% natural, convenient and easy to use. Lactose, gluten and sugar-free.

**Shop Now**

Home   About   Shop   Faq   Contact Us   My Account



# About PatchMD

EXHIBIT 1-D

www.patchplan.com

PLANS   PRODUCTS   HOW IT WORKS   REVIEWS   LOGIN

CALL 1-800-717-7413

# Daily Health
## is now easy

PatchMD is the Leading Provider of Topical Supplements.
Thousands of health conscious people switched to the Patch Plan.

Will you?

Forbes   TODAY   cafe mom   Buzz Feed   SHAPE   WOMAN'S HEALTH





★★★★★
## Anyone can start

Depo Beautifully. Stay energized
throughout the day. Keep well nourished.
The All Day Pack is the best way to start
for the Patch Plan newbies.

BUY

CALL 1-800-717-7421

## All Products (Total Items: 42)

Name ▼

**BEST SELLING PACKAGES**
- Bariatric Basics 1
- Bariatric Basics 2
- Daily Nutrition Multi For Women + Day
- Daily Nutrition Multi For Women + Night
- MultiVitamin Plus Patch
- Summer Pack

**ALL TIME**
- B12 Energy Plus Patch
- Garcinia Cambogia Plus Topical Patch
- Iron Plus Topical Patch
- Vitamin D3 Topical Patch

BY PATCHES
BY CATEGORIES
BY VITAMINS
BY INGREDIENTS

**All Day Pack**
★★★★★ 4 Review(s)
YOUR PRICE $59.85
ADD TO CART

**Anti-Aging Topical Patch**
★★★★★ 17 Review(s)
YOUR PRICE $19.95
ADD TO CART

**B12 Energy Plus Patch**
★★★★★ 84 Review(s)
YOUR PRICE $19.95
ADD TO CART

# EXHIBIT 1-E

## Mark

| | |
|---|---|
| **From:** | |
| **Sent:** | Sunday, January 28, 2018 9:50 AM |
| **To:** | Earl Hailey; markn@patchmd.com |
| **Cc:** | mark nielsen |
| **Subject:** | Fwd: Ohana Topical Patches posted new services |

Good morning,

Jen has been in contact with me as she apparently has been working with Dennis on a new company.

I wanted to bring the products to your attention as there is little doubt where the formulations came from.

This looks like gross theft of intellectual property and violation of any kind of non-compete.

What are your thoughts?

Get Outlook for iOS

From: Alignable <noreply@email.alignable.com>
Sent: Saturday, January 27, 2018 10:41 PM
Subject: Ohana Topical Patches posted new services
To:



Hi Barry,

Ohana Topical Patches has shared their featured services with you and are asking if you'll help them spread the word.
"Like" their services below to share it with your network.

1



**Ohana Bari Support Topical Patches**
Ohana Topical Patches

Formulated with a comprehensive blend of vitamins and min...







**Ohana Focus Pro Topical Patches**
Ohana Topical Patches

Formulated with a comprehensive blend of natural ingredie...





**P.S. Have you added your promotions and products and services yet?**

We'll automatically let your network know about what you post. Add your own referral opportunities

You are receiving information from your network you should know about
If you no longer wish to receive these type of emails, you can **unsubscribe**

Alignable205 Portland Street
Boston MA 02114

2

# EXHIBIT 1-F





Jennifer Laird
29 Gauguin Cir
Aliso Viejo, CA 92656

January 25, 2018

Dear Jennifer,

We received your email of your immediate resignation without any advance notice from your consulting relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Saturday, January 13, 2018.

Because you are no longer contracted by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control.  Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property  (collectively "Company Property") that (i) was paid for or developed during your consulting relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your consulting.  PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD.  Sharing Company Property could actually expose the recipient to liability.  Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm.  The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former consultant.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

PatchMD 6045 Harrison Drive, Suite 5, Las Vegas, NV 89120 - Phone: 702-749-7888



Jayme Frassett
15555 Huntington Village Ln, #270
Huntington Beach, CA 92647

January 25, 2018

Dear Jayme,

We received your email of your immediate resignation without any advance notice from your employment relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Saturday, January 13, 2018.

Because you are no longer employed by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control. Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property (collectively "Company Property") that (i) was paid for or developed during your employment relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your employment. PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD. Sharing Company Property could actually expose the recipient to liability. Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm. The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former employee.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

PatchMD 6045 Harrison Drive, Suite 5, Las Vegas, NV 89120 - Phone: 702-749-7888



Kymbirley Brake
5112 Cumberland Ave.
Westminster, CA 92683

January 25, 2018

Dear Kymbirley,

We received your email of your immediate resignation without any advance notice from your employment relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Saturday, January 13, 2018.

Because you are no longer employed by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control. Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property (collectively "Company Property") that (i) was paid for or developed during your employment relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your employment. PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD. Sharing Company Property could actually expose the recipient to liability. Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm. The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former employee.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

PatchMD 6045 Harrison Drive, Suite 5, Las Vegas, NV 89120 · Phone: 702-749-7888





Pearl Coetzee
4450 South Hualapai Way #1202
Las Vegas, NV 89147

January 25, 2018

Dear Pearl,

We received your email of your immediate resignation without any advance notice from your consulting relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Monday, January 15, 2018.

Because you are no longer contracted by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control.  Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property  (collectively "Company Property") that (i) was paid for or developed during your consulting relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your consulting.  PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD.  Sharing Company Property could actually expose the recipient to liability.  Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm.  The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former consultant.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

PatchMD 6045 Harrison Drive, Suite 5, Las Vegas, NV 89120 - Phone: 702-749-7888



Nicole Santos
850 S. 400W Unit #205
Salt Lake City, UT 84101

January 25, 2018

Dear Nicole,

We received your email of your immediate resignation without any advance notice from your consulting relationship with PatchMD, LLC ("PatchMD") over the holiday weekend on Saturday, January 13, 2018.

Because you are no longer contracted by PatchMD, you are required to immediately return all property of PatchMD in your possession or under your control. Such property includes, but is not limited to, any and all documents and/or files related to PatchMD's business, customers, suppliers, partners, designs, financials, prospects, affiliates, marketing plans or strategies, pricing strategies, email lists, formulations, and other intellectual and/or trade secret property (collectively "Company Property") that (i) was paid for or developed during your consulting relationship with PatchMD, LLC, (ii) used or relied upon any resources of PatchMD, or (iii) was provided or made available to you during your consulting. PatchMD expects that after returning all Company Property, you will also destroy or erase all copies of any Company Property in your possession in any manner of, whether in hard copy or maintained electronically and provided written affirmation that you are no longer in possession of such copies.

It is unlawful for you to use, share, or disclose any Company Property for any reason now that you terminated your relationship with PatchMD. Sharing Company Property could actually expose the recipient to liability. Accordingly, you are prohibited from using or disclosing PatchMD's Company Property, including, without limitations, PatchMD's customer lists or contact information, to contact or solicit any prospects, partners, affiliates, customers, and others who have business relationships with the company to redirect them away from PatchMD, disparage PatchMD, or otherwise interfere with the business relationships with any of these entities or individuals.

As you know, PatchMD has taken affirmative steps to keep its confidential and proprietary/trade secret information private and any improper use of its Company Property will cause irreparable harm. The Company will take all legal and remedial actions to protects its Company Property, including seeking injunctive relief and damages for any improper use or disclosure of its Confidential Information as a former consultant.

Please contact me at markn@patchmd.com by January 29, 2018 as to your intentions to abide by the above and schedule the return of all Company Property.

Sincerely,

Mark Nielsen
Interim CEO
PatchMD, LLC

PatchMD 6045 Harrison Drive, Suite 5, Las Vegas, NV 89120 - Phone: 702-749-7888

# EXHIBIT 1-G

Vitamins Plus P.O. #251548170 - jennifer@patchmd.com - PatchMD L...          https://mail.google.com/mail/u/2/#sent/160e13618a6dc459

In:sent

## Mail

Move to Inbox          More

**COMPOSE**

Vitamins Plus P.O. #251548170   Inbox   x

Inbox (1,540)

Starred          Manager #251
                 to me
Sent Mail

Drafts

Spam (7)

Trash

A_BBB

AA_Idearvessel

AA_NewProduct in...          PO#251548170.pdf

CBD          Jennifer Laird <jennifer@patchmd.com>
             to jennifer
AA_Patch_Storefr...

AA_PatchMD_Staff          ———— Fo          from:   Jennifer Laird <jennifer@patchmd.com>
                          From: Man
                          Date: Wed          to:     jennifer@patch4all.com
Google Calendar           Subject: VI
                          To: jennifer        date:   Wed, Jan 10, 2018 at 9:58 AM

                                             subject: Fwd: Vitamins Plus P.O. #251548170

                                             mailed-by: patchmd.com

                          —
                          Jennifer L Laird
                          Vice President
                          c. 702.690.6481
                          Skype: jlaird

                          PatchMD.com
                          "Using Today's Science For Tomorrow's Health"



The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged Material. A
than the intended recipient is prohibited without the express permission of the sender. If you received this communication in error, please contact the se

# EXHIBIT 1-H

Distributer of Patchmd - jennifer@patchmd.com - PatchMD LLC Mail                     https://mail.google.com/mail/u/2/#sent/160d71faaf2014cd



In:sent

**Mail**                                              Move to Inbox          More

COMPOSE              Distributer of Patchmd   Inbox   x

Inbox (1,540)
Starred                    ?        to me
Sent Mail
Drafts                              Good Morning,
Spam (7)                            I am interested in being a distributer for this product. Is there an opportunity to do so, and if so, what must I do.
Trash
A_BBB                               Thank You

AA_Ideavessel
AA_NewProduct In...                 Jennifer Laird <jennifer@patchmd.com>
CBD                                 to jennifer

AA_Patch_Storefr...                 Jennifer L.        from:   Jennifer Laird <jennifer@patchmd.com>
AA_PatchMD_Staff                    Vice Presic
                                    c. 702.600.       to:     jennifer@patch4all.com
                                    Skype: jlai
Google Calendar                                       date:   Tue, Jan 9, 2018 at 2:21 PM
                                    PatchMD.c
                                    "Using You        subject: Fwd: Distributer of Patchmd

                                                      mailed-by: patchmd.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged Material. /
than the intended recipient is prohibited without the express permission of the sender. If you received this communication in error, please contact the se

                    Click here to Reply or Forward

5.73 GB (19%) of 30 GB used                                                                    Po
Manage                                                                                         Powere

# EXHIBIT 1-I

Name of new Item - jennifer@patchmd.com - PatchMD LLC Mail          https://mail.google.com/mail/u/2/#sent/160dcceb1d9e2f8d

In:sent

## Mail

Move to Inbox          More

COMPOSE

**Name of new Item**  Inbox  x

Inbox (1,640)

Starred

Sent Mail          to PATCH, earl, me

Drafts          Hi, Don

Spam (7)          Could you share me the name of new patch product (for ADHD)?
                  I create a new brochure of patch MD, so you have the image, please kindly send it me as well.

Trash          Thank you !

A_BBB

AA_kleevessel

AA_NewProduct in...

CBD

AA_Patch_Storefr...

AA_PatchMD_Staff          **Jennifer Laird** <jennifer@patchmd.com>
                          to jennifer

Google Calendar

                  --                from:   Jennifer Laird <jennifer@patchmd.com>
                  Jennifer L.
                  Vice Presid      to:     jennifer@patch4all.com
                  e. 702.600.      date:   Tue, Jan 9, 2018 at 2:02 PM
                  Skype: jlai
                                   subject: Fwd: Name of new Item
                  PatchMD.c
                  *Using Tou       mailed-by: patchmd.com



The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged Material. / than the intended recipient is prohibited without the express permission of the sender. If you received this communication in error, please contact the se

Click here to **Reply** or **Forward**

# EXHIBIT 1-J

**From:** <markn@patchmd.com>
**Date:** February 8, 2018 at 5:27:05 PM PST
**To:** <jennifer@jllmarketing.com>
**Subject: MailChimp**

Jennifer,

We still have not received the 12 or so email lists from our MailChimp account that you have withheld
from us.  We cannot use the copies from 3dCart as you know since we need the actual files from
MailChimp that have the unsubscribes in order to stay in legal compliance.  These are all customer lists
and prospect lists from shows and from the various PatchMD websites that belong to PatchMD and are
our proprietary information.  The PatchMD business is daily being damaged while you withhold the
return of this information.  Thank you for your prompt attention to this matter.

*Mark Nielsen*
Interim CEO
PatchMD, LLC

mark@patchmd.com

# EXHIBIT 2

## DECLARATION OF EARL HAILEY IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER, MOTION FOR PRELIMINARY INJUNCTION

I, Earl Hailey, being first duly sworn, declares as follows:

1.     I am over the age of 18 and am competent to testify to the matters set forth herein.

2.     I am submitting this declaration in support of PatchMD, LLC's Application for Temporary Restraining Order and Motion for Preliminary Injunction (the "Application").

3.     On or about September 2009, Dennis Shepherd ("Shepherd") and I formed PatchMD to sell vitamins and supplements in a topical patch that utilizes the skin for the delivery system.

4.     PatchMD is in the business of developing and selling topical patches that utilizes the skin for the delivery system of vitamins and supplements. The patches contain innovative technology including in their formulations and three layer design.

5.     As part of its ongoing business, PatchMD distributes patches to retailers and wholesalers and sells patches directly to customers through its online platforms, PatchMD.com, PatchRevolution.com, and PatchPlan.com.

6.     At all relevant times, I have been the President of PatchMD.

7.     Shepherd was and now claims to be the largest interest holder in PatchMD. Shepherd also served as the CEO of PatchMD from its inception until he was removed from that position on December 12, 2017.

8.     PatchMD possesses confidential information and trade secrets including, but not limited to: (a) patch formulations; (b) patch design; (c) client lists (past, present, and prospective); (d) business relationships and internal pricing strategies with patch creators, manufacturers, wholesalers, affiliates, and retailers;  (e) search engine optimization and search engine marketing including keywords used and targeted in relation to its online platforms;  (f) online advertising strategies, bids, commission rates, and the display networks, affiliate sites and agencies used; and (g) marketing and advertising materials created for PatchMD prior to January 16, 2018  (the "Trade Secrets"). PatchMD's Trade Secrets give PatchMD an economic edge in a competitive market by not being generally known to or readily ascertainable by others.

1 of 3

9.      PatchMD has kept these Trade Secrets confidential by, among other things, drafting, preparing, and distributing nondisclosure agreements, communicating nondisclosure expectations, and otherwise instituting policies to protect the Trade Secrets.

10.     The confidential and proprietary nature of the Trade Secrets has been repeatedly acknowledged by PatchMD executives and employees, including Shepherd, who understand the importance of protecting the Trade Secrets from outside businesses and third-parties and enforcing PatchMD's confidentiality policies. *See, e.g.,* August 18, 2016 Email from Dennis Shepherd to Jane Baxter, a true and correct copy of which is attached hereto as Exhibit 2-A.

11.     In 2017, while still performing the role of PatchMD's CEO, I learned that Shepherd was drawing a salary in excess of $600,000. This equated to a salary of $50,000 per month, which was well in excess of the monthly salary Shepherd misrepresented he was taking. Shepherd also paid himself an unauthorized bonus of $75,000 between November 25 and December 8, 2017.

12.     I then confronted Shepherd about the need to distribute profits to the other members of PatchMD, but Shepherd repeatedly told me that he did not care about the other members and would only agree to make distributions to them upon a sale of PatchMD.

13.     Upon learning of Shepherd's improper actions, including, but not limited to, Shepherd's unauthorized drawing of an annual salary in excess of $600,000 and refusal to adhere to his fiduciary duties to the other members of PatchMD, I, along with the remaining interest holders in PatchMD, elected to remove Shepherd as CEO.

14.     As part of Shepherd's removal as CEO of PatchMD, Shepherd and PatchMD came to an understanding whereby Shepherd agreed to relinquish all of his right, title and interest in PatchMD and agreed not to compete with PatchMD for a period of three years.

15.     Following Shepherd's removal as CEO, I learned that Shepherd, along with PatchMD's Vice President Jennifer Laird and PatchMD's CFO Kymbirley Brake, acted to the detriment of PatchMD by, *inter alia*, forming a competing company, Patch 4 All, Inc., and misappropriating PatchMD's Trade Secrets to further the interests of Patch 4 All to the detriment of PatchMD.

16.    Defendants' actions have and, if not enjoined, will continue to cause irreparable harm to PatchMD.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct based upon my knowledge, information, and belief.

Executed this 15th day of February, 2018

EARL HAILEY, PRESIDENT
PATCHMD, LLC

# EXHIBIT 2-A

**From:** spinshep@aol.com [mailto:spinshep@aol.com]
**Sent:** Thursday, August 18, 2016 9:56 AM
**To:** jbaxter7287@gmail.com; intlearl@aol.com; mark@textpower.com
**Subject:** Re: PatchMD™ - Request for Information

Jane, the requested information (including respective quantities ,source information ,potencies ,and extract ratios ,where applicable) are trade secrets and will not be supplied, after any order is made a CofA will accompany said orders of each product and not before. We at PatchMD have always had this policy.

Thanks you

Dennis Shepherd
CEO PatchMD
714-318-4705
dennis@patchmd.com
spinshep@aol.com

-----Original Message-----
**From:** J Baxter <jbaxter7287@gmail.com>
**To:** dennis shepherd <spinshep@aol.com>
**Cc:** jane <jane@solutionstoday.ca>
**Sent:** Thu, Aug 18, 2016 6:53 am
**Subject:** Fwd: PatchMD™ - Request for Information

Hello Dennis,

Please see the attached document and provide required information and inquiries to Tania at Nutrasource.

Thanks,

Jane

Jane Baxter
905-435-8813

---------- Forwarded message ----------
**From:** Tania John <TJohn@nutrasource.ca>
**Date:** Wed, Aug 17, 2016 at 4:47 PM
**Subject:** PatchMD™ - Request for Information
**To:** "jbaxter7287@gmail.com" <jbaxter7287@gmail.com>
**Cc:** Jennifer Ellis <JEllis@nutrasource.ca>, Frederick Choy <FChoy@nutrasource.ca>

Dear Jane,

As Jennifer prefaced, I will be acting as PM on this project and am excited to get started. In order to begin the Regulatory Risk Analysis phase however, I will require responses to the queries outlined in the attached 'Request for Information' document, where applicable. Thank you.

We look forward to working with you,

**Tania John, B.Sc., M.Sc.**
**Associate Director, Regulatory Affairs**

Nutrasource | 120 Research Lane, Suite 203, Guelph, ON, Canada N1G 0B4
T: 226-706-2535 | C: 519-803-8529 | F: 888-531-3466 | E: tjohn@nutrasource.ca | W: www.nutrasource.ca

## nutras⌀urce

ⓘⓝ🐦ⓕ🔊

**Connect with us at:** Natural Products Expo East (Baltimore, Sept 22-24 – booth #5733) | SupplySide West (Las
Vegas, Oct 4-8 – booth #T129)

GRAS ODITEBA IfOS ixgen

This communication may contain information that may be privileged, confidential or copyrighted under applicable law. If you are not the intended recipient you are hereby formally notified that any use, copying or distribution of this email, in whole or in part, is strictly prohibited. Please notify the sender by return email and delete this email from your system. Unless explicitly and consciously designated as a "Service Letter", this e-mail does not constitute a contract offer, a contract amendment, or an acceptance of a contract offer. This e-mail does not constitute a consent to the use of sender contained information for direct marketing purposes or for transfers of data to third parties.